814 A.2d 572

**Elbert SALLIE, et al.,**

v.

**TAX SALE INVESTORS, INC., et al.**

**No. 2673, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Dec. 30, 2002.

Andrew D. Freeman (Joshua N. Auerbach and Brown, Goldstein & Levy, LLP, on the brief), Baltimore, for appellants.

Hugh E. Donovan (Donovan & Broderick, P.C., on the brief), Rockville, for appellees.

HOLLANDER, JAMES R. EYLER, KRAUSER, JJ.

JAMES R. EYLER, Judge.

This is an insurance coverage dispute. The basic issue is whether the insurance policy issued by appellee, The Hartford Insurance Company ("Hartford"), to Tax Sale Investors, Inc.

("TSI"), provides coverage for a judgment obtained by appellants, Elbert Sallie and Diana Marshall ("Sallie"), on a wrongful eviction claim, against TSI.[1] The policy designated an office location for TSI, but the eviction occurred on other property owned by TSI. Appellants contend that the policy, a "Spectrum Policy" insuring "Business Liability" and expressly including claims for wrongful eviction, covered the claim against TSI because the wrongful eviction was initiated at the office location designated in the policy, even though the eviction occurred on other property. Appellee argues that TSI's policy was of a more limited nature and did not cover the wrongful eviction claim, because the eviction did not occur at the location designated in the policy. Appellee's argument relies primarily on the language contained in two endorsements to the policy, which appellee suggests clearly and unambiguously indicate the limited nature of the policy and preclude coverage for appellants' claim. On the other hand, appellants argue that (1) the endorsements are not valid and can not be relied on by appellee, and (2) assuming the endorsements are enforceable, the language should be interpreted to provide coverage when viewed in the context of the entire policy and in light of the circumstances surrounding the execution of the policy. On cross-motions for summary judgment, the Circuit Court for Baltimore City granted appellee's motion on the ground that the policy unambiguously excluded coverage.

We hold that the endorsements are enforceable and that the language contained in the endorsements is ambiguous. In addition to the ambiguity as to the policy's coverage, there remains a fact question as to whether the eviction arose out of operations covered by the policy. Regardless of whether we classify appellee's policy as a premises liability policy or a business liability policy, our review of relevant case law suggests that coverage for the wrongful eviction may exist if there is a sufficient connection between the wrongful eviction and, in the words of the endorsements, the operation of, or

---

1. The procedural context is a garnishment action brought by appellants against appellee in the Circuit Court for Baltimore City.

operations incidental to, the designated premises. Accordingly, we must vacate the summary judgment entered in favor of appellee and remand to the circuit court for further proceedings.

## Factual Background

Appellants were tenants in an apartment located at 4800 Claybury Avenue in Baltimore City. In June, 1996, TSI acquired the property by tax sale, and on August 16, 1996, evicted appellants.

Appellants filed suit in the United States District Court for the District of Maryland against TSI, John W. Anderson, Sheriff of Baltimore City, and Nicholas A. Piscatelli, an officer and stockholder in TSI. Appellants alleged, in essence, that TSI acquired title to the property at a tax sale, pursuant to Md.Code, Tax–Property sections 14–808, *et seq.*, as it then appeared, and evicted appellants as tenants without prior notice to them. Appellants asserted that they were deprived of due process of law in violation of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights. Appellants also asserted a violation of section 8–203(e) and (f) of the Maryland Code's Real Property article based on TSI's treatment of their security deposit.[2]

Ultimately, the federal court entered judgments in favor of appellants and against TSI only. On June 10, 1999, a judgment was entered in the amount of $115,030.00 for compensatory and punitive damages, and on December 13, 1999, a judgment was entered in the amount of $108,089.81 for attorney's fees and expenses. Appellants recorded both judgments in the Circuit Court for Baltimore City.

At the time of the eviction, TSI was named as an insured in a policy issued by appellee, but appellee denied coverage. After recording the judgments in circuit court, appellants served a writ of garnishment on appellee, seeking the pro-

---

2. Apparently, the parties agree that there is no coverage under appellee's policy with respect to this claim.

ceeds of its insurance policy. Appellants also filed a motion for declaratory judgment, seeking a declaration that appellee's policy provided coverage for the judgments. The parties filed cross motions for summary judgment. In an opinion and order dated February 22, 2002, the circuit court denied appellants' motion and granted appellee's motion, concluding that the language in the "Limitation of Coverage—Real Estate Operations" endorsement and the language in the "Limitation of Liability Coverage to Designated Premises" endorsement clearly and unambiguously did not extend coverage to the property on which the wrongful eviction occurred.

The policy in question was issued by appellee to TSI, effective January 14, 1994. The policy was renewed on January 14, 1995, and again on January 14, 1996, and was in force on August 16, 1996, the date of the eviction. The "Limitation of Coverage Real Estate Operations" endorsement was part of the policy when originally issued, and the "Limitation of Liability Coverage to Designated Premises" endorsement was added on November 9, 1995, effective January 14, 1995.

Additional relevant facts will be set forth as necessary.

### Issues Presented and Parties' Contentions

The principal question before us is whether the policy in question covers the wrongful eviction claims by appellants that resulted in judgments. Appellants contend that (1) appellee should be estopped from relying on the endorsement in the original policy because it did not expressly rely upon it until long after this litigation had commenced, (2) the endorsement added in 1995 is void because proper notice was not given of the change, and (3) there is coverage under the basic policy provisions, and coverage is not excluded under either endorsement. Appellants assert that the policy unambiguously provides coverage, or if ambiguous, that it should be construed against the insurer to provide coverage as a matter of law, or at the very least, that there is sufficient ambiguity to create an issue of fact. With respect to the existence of an ambiguity, appellants rely on evidence of representations made by appel-

lee's agent, in addition to the language in the policy and related documents.

Appellee contends that (1) under the terms of the endorsements, the policy unambiguously excludes coverage, (2) proper notice was given of the 1995 endorsement, and (3) coverage was not created by any representations or other acts by appellee. With respect to (3), appellee asserts that the evidence relied upon by appellants is not legally sufficient to create coverage, but if it were, there would be a factual dispute that could not be resolved on summary judgment.

## Discussion

Before reaching the coverage issue, we must determine whether appellee may rely on either endorsement. First, appellants argue that because the "Limitation of Coverage—Real Estate Operations" endorsement in the original policy was not expressly relied upon until after years of litigation, appellee is estopped from now relying on it. Second, appellants contend that the "Limitation of Liability Coverage to Designated Premises" endorsement should be declared void as a matter of law because appellee failed to provide adequate notice of the change effected by the endorsement. For the reasons explained below, we find both of appellants' arguments unpersuasive, and therefore consider the scope of the policy's coverage, including the language of both endorsements.

### *Estoppel*

Appellants' estoppel argument must be rejected based on "the rule in Maryland that 'waiver or estoppel may occur only when it does not create new coverage; an extension of coverage may only be created by a new contract.'" *Allstate Ins. Co. v. Reliance Ins. Co.*, 141 Md.App. 506, 515, 786 A.2d 27 (2001) (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 497 (4th Cir.1998) (citing *Prudential Ins. Co. v. Brookman*, 167 Md. 616, 620, 175 A. 838 (1938))).

This Court, relying on a crucial distinction highlighted by the Court of Appeals in *St. Paul Fire & Marine Ins. Co. v. Molloy*, 291 Md. 139, 146 n. 4, 433 A.2d 1135 (1981), in *dicta*, has explained that

> defenses founded upon lack of basic coverage [as opposed to] those arising from the failure of the claimant to satisfy some 'technical' condition subsequent ... may not be waived merely by the company's failure to specify them in its initial response to the claim, for the effect of that would be to expand the policy to create a risk not intended to be undertaken by the company.

*Ins. Co. of North America v. Coffman*, 52 Md.App. 732, 743, 451 A.2d 952 (1982) (citing *Molloy* and *Neuman v. Traveler's Indemnity Co.*, 271 Md. 636, 319 A.2d 522 (1974)).

In *Coffman*, the insurer failed to mention the additional defense that coverage would be excluded under a certain section of the policy exclusions until it submitted its motion for summary judgment. *Id.* at 740, 451 A.2d 952. This Court held that the doctrine of waiver or estoppel could not be applied because the condition contained in the exclusionary provision was "not merely a prerequisite to consideration of a claim ... [but] rather, an exclusion from coverage," and coverage could not be established by waiver or estoppel. *Id.* at 743, 451 A.2d 952. In addition, in *Washington Metropolitan Area Transit Authority v. Bullock*, 68 Md.App. 20, 39–40, 509 A.2d 1217 (1986), this Court held that "[t]he mere failure of the adjustor to raise the defense therefore cannot, by waiver or estoppel, create coverage that would otherwise not exist," pointing out that "[t]he defense at issue [there went to] basic coverage, not to some precondition to asserting the claim."

Similar to the circumstances in *Coffman* and *Bullock*, the defense at issue here goes to the substantive question of the policy's coverage, not a technical condition to recovery. Accordingly, appellants may not rely on an estoppel theory to change the scope of the policy's coverage by prohibiting appellee from relying on language in the original endorsement.

*Notice*

■ Appellants' second argument, that appellee may not rely on the November 1995 endorsement because it failed to provide adequate notice of the change to TSI and is, therefore, void as a matter of law, must also be rejected. Appellants rely on a regulation, rather than common law, to support their argument. COMAR 31.08.05.02(A),[3] the provision governing notice when adding, reducing, or eliminating property and casualty insurance coverage, provides:

After July 30, 1981, if any insurer upon renewal or by endorsement initiates any change in any primary property or casualty policy, which is not at the request of the insured (except for motor vehicle liability insurance to which Insurance Article, § 27–605, Annotated Code of Maryland, is applicable), which effects an elimination of or reduction in benefits including any increase in deductible, the insurer shall give the insured, in general terms, written notice of the change in the policy. The notice may be mailed or delivered to the insured by the insurer or its authorized representative, in which case the insurer shall provide its authorized representative with the appropriate notice. This notice can be by way of the following phrase or its equivalent:

Notice: Certain coverage in this policy has been eliminated or reduced, or a change has been made in the deductible. The description of the change in coverage or deductible is as follows:

In the present case, the endorsement contained the words—"This endorsement changes the policy. Please read it carefully."—at the top in bold, capitalized letters. Appellants argue that appellee did not comply with the regulatory requirements because the endorsement did not state that coverage had been eliminated or reduced or provide a description of the change in

---

**3.** Preliminarily, we note that COMAR 31.08.05.03C states that the regulation does not apply "to commercial risks who use the services of a risk manager, broker, or insurance adviser." The parties assume that the regulation applies, and having no basis upon which to conclude otherwise, we shall make the same assumption.

coverage. They also argue that other documents, such as a policyholder notice sent to TSI by appellee at roughly the same time as the endorsement, failed to convey a reduction in coverage.

Based on our review of the regulatory language, applicable case law, and the limited facts relating to the issuance of the endorsement, we hold that appellants are not entitled to judgment as a matter of law on this point. COMAR 31.08.05.02(A) does not require specific language to indicate that a change has been made. An insurer, under the circumstances in this case, is not required to paraphrase or otherwise explain the change in addition to the language in the endorsement itself. Requiring an insurer to state the substantive change in two different ways would increase the possibility of ambiguity.

The purpose of the regulation is to require the insurer to give notice of the change. The endorsement to appellee's policy expressly stated that it effected a change. In a prior opinion discussing the regulation in question, this Court emphasized the importance of providing adequate notice but did not impose any bright line rules regarding necessary language. *See CIGNA Prop. & Cas. Co. v. Zeitler,* 126 Md.App. 444, 472, 730 A.2d 248 (1999) (upholding the trial court's instructions to the jury as to the requirements of the regulation, including the statement that no specific language must be used when providing notice). *J.A.M. Assocs. of Baltimore v. Western World Ins. Co., Inc.,* 95 Md.App. 695, 704, 622 A.2d 818 (1993), and *Gov't Employees Ins. Co. v. Ropka,* 74 Md. App. 249, 268, 536 A.2d 1214 (1988), discussed by the parties, did not interpret the regulation in question.

Appellants' arguments regarding the endorsement tend to bear on the question whether the endorsement limited coverage as appellee suggests, and whether coverage was already limited by the original endorsement to the policy, rather than whether appellee provided adequate regulatory notice. The endorsement did not fail as a matter of law to provide sufficient notice to TSI, and we reject appellants' argument

that the November 1995 endorsement is void as a matter of law. The resolution of the notice issue will ultimately be determined as part of the resolution of the coverage issue.

### Coverage

Our interpretation of the policy, including the language in the endorsements, is guided by well-settled principles set forth in *Pacific Indemnity Co. v. Interstate Fire & Casualty Co.*, 302 Md. 383, 488 A.2d 486 (1985), where the Court of Appeals stated:

> Construction of insurance contracts in Maryland is governed by a few well-established principles. An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby. To determine the intention of the parties to the insurance contract, which is the point of the whole analysis, we construe the instrument as a whole. Maryland courts should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution.

> In so doing, we accord words their ordinary and accepted meanings. The test is what meaning a reasonably prudent layperson would attach to the term. This Court has consulted Webster's Dictionary, Random House Dictionary, or, less often, Black's Law Dictionary.

> In the first instance the inquiry is confined to analysis of the language used. Courts may construe unambiguous contracts as a matter of law.

> The language used may be ambiguous if it is "general" and may suggest two meanings to a reasonably prudent layperson. If the language of the contract is ambiguous, extrinsic evidence may be consulted to determine the intention of the parties and whether the ambiguous language has a trade usage. Construction of the contract by the parties to it before the controversy arises is an important aid to interpretation of uncertain terms.

> If the extrinsic evidence presents disputed factual issues, construction of the ambiguous contract is for the jury. The

court may construe an ambiguous contract if there is no factual dispute in the evidence.

*Id.* at 388–89, 488 A.2d 486 (citations omitted).

■ We must first determine whether the language of the policy is clear or ambiguous. If it is clear, then we need not look beyond the words of the policy. If the language is deemed ambiguous, extrinsic evidence is admissible to determine the intention of the parties.

■ Appellee relies on two separate endorsements to support its argument that appellants' claim is not covered. The first, entitled "Limitation of Coverage—Real Estate Operations," and in place when the policy was initially executed, states:

With respect to real estate operations, the insurance applies only to "bodily injury," "property damage," "personal injury" or "advertising injury" *arising out of the ownership, operation, maintenance or use of:*

1. Such part of any premises you use for general office purposes; and

2. Premises listed with you for sale or rental, if:

a. You do not own, operate, manage or rent the premises;

b. They are not in your care, custody, or control; or

c. You do not act as agent for the collection of rents in any supervisory capacity.

(emphasis added). The second endorsement, entitled "Limitation of Liability Coverage to Designated Premises," was added to the policy on November 9, 1995, effective January 14, 1995, and provides that "[t]his insurance applies only to 'bodily injury, "property damage,' 'personal injury,' and 'advertising injury,' and medical expenses *arising out of the ownership, maintenance or use of the premises described in the Declarations and operations necessary or incidental to those premises.*" (emphasis added).

There is no dispute about the following: (1) the only address listed in the Declarations pages of the policy was "1015–

1017 Cathedral Street, Baltimore, Md. 21201," described as "offices-real estate agents," and (2) the policy further defined "personal injury" to include injury resulting from a wrongful eviction. The parties dispute whether the underlined language limits coverage to an eviction occurring at the designated premises, or whether the provisions cover an eviction occurring on another property but initiated by TSI in its office located at the designated premises.

Again, the starting point of our analysis requires that we determine whether the policy is clear and unambiguous. After considering the relevant Maryland cases, we conclude that the language in appellee's policy "may suggest two meanings to a reasonably prudent layperson." Consequently, we vacate the summary judgment.

Many cases, arguably analogous if not on point, are distinguishable either on the factual circumstances or the policy's language. We shall not undertake to review all such cases in this opinion. We find four cases, discussed by the parties, to be particularly instructive. We shall set them forth in chronological order and then discuss their pertinence to the present case.

In 1963, in *Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Travelers Ins. Co.*, 233 Md. 205, 196 A.2d 76 (1963), the Court of Appeals construed policy language similar to the language in the present case to provide coverage for an auto repair shop whose employee was involved in an auto accident while driving one of its customer's vehicles to the customer's home. Despite the fact that it was not standard practice for the repair shop to deliver its customers' vehicles, the Court concluded that "[t]he relationship between [employee's] use of the car and [insured's] business was clearly sufficient ... to render the use of the car an operation 'necessary or incidental' to the maintenance of the repair shop." *Id.* at 213, 196 A.2d 76. Consequently, the Court held that the insured's policy covered its employee's accident that occurred away from the repair shop premises.

In *Northern Assurance Co. of America v. EDP Floors, Inc.*, 311 Md. 217, 533 A.2d 682 (1987), an intoxicated employee of the insured injured a third party while unloading tiles from a truck with a hydraulic lift. The accident occurred away from the insured's premises, and the insured's general liability carrier denied coverage. The trial court determined that the insurer did have a duty to defend and pay any resulting judgment, and the insurer appealed. The Court of Appeals carefully examined the language in an exclusionary clause of the policy, which excluded coverage for injury "arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any automobile, aircraft or watercraft owned or operated by, or rented or loaned to, any insured, or . . . owned or operated by a person in the course of his employment by any insured." *Id.* at 225, 533 A.2d 682. Reasoning that "[t]he words 'arising out of' must be afforded their common understanding, namely, to mean originating from, growing out of, flowing from, or the like," the Court held that the exclusionary clause applied under the circumstances, precluding coverage for the accident that occurred while the insured's employee unloaded tiles from a truck using a hydraulic lift. *Id.* at 231–32, 533 A.2d 682.

This Court, in *Chesapeake Physicians Prof'l Ass'n v. The Home Ins. Co.*, 92 Md.App. 385, 608 A.2d 822 (1992), interpreted similar, but not identical, policy language to that involved in the present case. In *Chesapeake Physicians*, the insured was a non-profit physicians professional association that provided administrative support services to health care provider organizations. The insured was sued by a woman for the wrongful death of her husband based on alleged misrepresentations by the insured regarding the scope of its coverage for liver transplants. The trial court entered a judgment declaring that, as a matter of law, the insurer had no duty either to indemnify or defend the insured.

The policy involved in *Chesapeake Physicians* was a business owners policy that included provisions excluding certain types of damages and claims from its broad comprehensive general liability coverage. More specifically, a liability limita-

tion endorsement limited coverage to "an occurrence [ ] arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto. . . ." *Id.* at 388, 608 A.2d 822. The insurer argued that the endorsement converted the policy to a limited premises liability policy, while the insured argued that business operations conducted from the premises were covered under the language of the endorsement. This Court focused on the linguistic structure of the policy language, concluding that " 'operations necessary or incidental thereto' modified not 'premises' but 'ownership, maintenance, or use of the premises.' " *Id.* at 395, 608 A.2d 822. This Court found this distinction crucial, recognizing that if the wording was otherwise, the insured's argument might be more persuasive.

This Court's linguistic interpretation in *Chesapeake Physicians* supported its conclusion that the policy was limited to premises liability, rather than broader business liability, which this Court also suggested was reinforced by other portions of the policy. First, this Court pointed out that under the description of property and operations covered, the only notation was the word office, not a more specific description. Second, this Court emphasized the fact that premiums were calculated not on the basis of certain types of risks, but on the square footage of the properties and premises covered. Finally, this Court recognized that industry custom, *i.e.,* the usual manner in which insurance policies are generated, was that policies were not individually tailored to each particular customer, but instead started with the most expansive coverage, and then used exclusionary language tailored to the particular customer. In *Chesapeake Physicians,* the endorsement was part of the insured's policy from the beginning. Using the supporting factors to bolster its linguistic interpretation, this Court held that the policies were premises liability policies that did not cover the wrongful death action against insured.

Finally, in *Hartford Fire Ins. Co. v. Annapolis Bay Charters, Inc.,* 69 F.Supp.2d 756 (D.Md.1999), a third party chartered a boat from the insured, and then sued the insured when the individual's hand was mangled in an accident allegedly

caused by the insured's failure to select a safe boat and a competent captain. When the insurer brought an action seeking a declaratory judgment that it was not required to defend or indemnify the insured, the court had to determine whether the injuries in the underlying tort action "arose out of the ownership, maintenance or use of insured's premises." Guided by what it deemed to be unambiguous language in the policy and endorsement, the court held that the policy did not provide coverage under the circumstances.

The policy in *Annapolis Bay Charters* was a spectrum policy that contained a "Limitation of Liability Coverage to Designated Premises" endorsement, which limited coverage to injury "arising out of the ownership, maintenance or use of the premises described in the Declarations and operations necessary or incidental to those premises." *Id.* at 759. Citing *Chesapeake Physicians,* as well as drawing its own conclusions about how a reasonably prudent layperson would interpret the contract language, the court concluded that the language in the endorsement created what is commonly referred to as premises liability coverage. At the same time, however, the court agreed with the insured that the plain language also indicated that some, but not all, business operations, specifically customary uses of the designated premises, fell within the policy's coverage. The court expressed concern that "[a]dopting a broader interpretation would extend coverage to nearly all aspects of ABC's business operations," but stated that it was not required to draw the line because the specialized business of chartering water craft to be used off-site clearly did not qualify as use of the premises, or as necessary or incidental to the declared uses. *Id.* at 761. The court's decision was further supported by the general language included in the Declarations page, which described the two insured premises as "offices-general" and "hardware-retail."

In the case before us, the endorsements, taken together, provide coverage for real estate operations or other business operations "arising out of the operation" of TSI's office located at 1015–1017 Cathedral Street. Based on our review of the above cases, we conclude that this may include the wrongful

eviction in this case. This conclusion is based on (1) the distinguishing feature of *Chesapeake Physicians,* a decision based on different policy language, heavily relied upon by this Court, (2) the language used by the federal court in *Annapolis Bay Charters,* with which we agree, suggesting that certain business operations are covered even when the injury occurs off the designated premises, (3) the Court of Appeals' decision in *Pennsylvania Threshermen* discussing the need to look for a causal connection between the injury and the insured's business, in an analogous context, and (4) other relevant portions of appellee's policy that could support a finding that coverage exists on the facts of this case.

First, appellee's argument relies heavily on its contention that this Court's decision in *Chesapeake Physicians* provides the best guidance for resolving this issue in its favor. Appellee ignores the fact, however, that *Chesapeake Physicians* is easily distinguishable based on the different wording used in the respective endorsements, especially given the fact that this Court's prior decision rested primarily on the endorsement's linguistic structure. In *Chesapeake Physicians,* this Court focused on the language "operations necessary or incidental thereto," concluding that operations modified the words "ownership, maintenance or use," which supported the interpretation that the policy intended to provide coverage limited to the premises. To the contrary, in the two endorsements in the present case, "operations" modifies "premises," suggesting that coverage extends to injuries arising out of operations on the premises. This Court, in *Chesapeake Physicians,* acknowledged that if the policy language had been different, it might have supported a different interpretation.

Second, *Annapolis Bay Charters,* another case heavily relied on by appellee, provides support for appellants' interpretation of the policy. Despite the fact that the Court in *Annapolis Bay Charters* held that the policy did not provide coverage for the tort action in that case, the opinion expressly stated that "[t]he plain language of the Endorsement indicates that some business operations come under the Policy's coverage, but it does not follow that all of ABC's business opera-

tions are covered. Instead, coverage extends only to customary uses of the premises." *Annapolis Bay Charters,* 69 F.Supp.2d at 761. Unlike the circumstances in *Annapolis Bay Charters,* where the Declarations page contained descriptions of the premises as "offices-general" and "hardware-retail" and the injurious activity involved off-site boat chartering, the facts alleged in the present case suggest that the wrongful eviction by TSI could be viewed as a type of business operation covered by appellee's policy, which described the designated premises as "office-real estate agents." [4] In addition, the federal court's reliance on the reasoning employed by this Court in *Chesapeake Physicians* was misplaced, given the fact that the language in *Annapolis Bay Charters*—"necessary or incidental to those premises"—mirrored the language in the present case, rather than the language in *Chesapeake Physicians.*

Next, the Court of Appeals' decision in *Pennsylvania Threshermen* provides a basis for a broad interpretation of the phrases "arising out of" and "necessary or incidental to," recognizing that injuries that occur away from the designated premises may be causally connected to the insured's operation of its business from the designated premises. The Court's decision in *Pennsylvania Threshermen* is especially helpful given the fact that it suggests factors for the court to examine when determining whether the causal relationship is sufficient. 233 Md. at 211–12, 196 A.2d 76 (explaining that such factors include "the nature of the transaction, its connection with the business, and whether it is a natural and/or necessary incident of the operation thereof, though not necessarily foreseen or expected").

---

4. Appellants allege that the wrongful eviction was initiated by TSI out of its real estate offices located on the premises designated in the policy. In addition, appellants allege that appellee was aware that TSI was in the business of purchasing tax liens, collecting money owed on those properties subject to the liens, and owning, managing, and/or foreclosing upon some of those properties. This case is before us on summary judgment, and the facts will ultimately be determined by the trial court.

Finally, our review of other relevant portions of the policy supports our conclusion. First, the policy is designated as a "Spectrum Policy," which implies broad coverage of a variety of risks. The policy also uses the term "business liability" to describe its basic coverage. While we recognize that the industry custom is to start out with standard policy forms that may provide broad coverage and then tailor the policy to the insured's needs, using endorsements and exclusions, we find no indication, other than the language of the endorsements that we have already discussed, that coverage was intended to be as limited as argued by appellee. For example, the policy defines the "coverage territory" as including "[t]he United States of America ..., Puerto Rico and Canada." Similarly, some of the types of damages covered by the policy, such as advertising injury, can and usually do occur off the designated premises. Significantly, injury associated with wrongful eviction, which is expressly included in the definition of personal injury, would be covered, under appellee's reading of its policy, only if TSI wrongfully evicted itself from its own office or at some future date subleased a portion of its office and wrongfully evicted its subtenant. Ultimately, we must reject appellee's argument that its policy unambiguously limited coverage to injury occurring at the designated premises.

Our review of cases in jurisdictions other than Maryland was not very helpful. Some of those cases, however, provide support for our conclusion that policies that include language appearing to limit coverage to injuries "arising out of the ownership, maintenance or use of the designated premises and operations necessary or incidental thereto (or operations necessary or incidental to the premises)" may be interpreted as providing coverage for injuries occurring away from the designated premises when there is a sufficient nexus between the injury and the insured's business operations. While some of the cases focus on distinguishing between comprehensive general liability ("CGL") policies and Owner, Landlord & Tenant ("OL & T") policies, others suggest that even OL & T policies may sometimes be interpreted as providing coverage for injuries that occur away from the designated premises. What all

of the cases have in common is that each court was faced with the task of interpreting some variation of the "arising out of" language contained in TSI's policy.

Two cases involved policies that the court characterized as CGL policies, which contained endorsements with language similar to the policy in the present case. *See American Guar. Liab. Ins. Co. v. The 1906 Co.*, 129 F.3d 802 (5th Cir.1997); *Southeast Farms, Inc. v. Auto–Owners Ins. Co.*, 714 So.2d 509 (Fla.App.1998). In both cases, the court held that the off-premises injury was covered by the policies despite an endorsement limiting coverage to designated premises. Interpreting the endorsement language broadly, the courts focused on whether there was a causal connection between the injury and the operation of the insured's premises. Finding that the actions causing the injuries were set in motion by on-premises operations "necessary or incidental to" the insured's business, both courts concluded that the policies provided coverage, supported further by the fact that they were CGL, rather than OL & T policies.

On the other end of the spectrum are those cases in which the court classified the policy as an OL & T policy and ended its coverage inquiry with that determination. *See American Empire Surplus Lines Ins. Co. v. Bay Area Cab Lease, Inc.*, 756 F.Supp. 1287 (N.D.Cal.1991); *Harvey v. Mr. Lynn's, Inc.*, 416 So.2d 960 (La.App.1982); *Parliament Ins. Co. v. Bryant*, 380 So.2d 1088 (Fla.App.1980). In the cases that fall into this category, the courts determined that, where the policy could clearly and unambiguously be classified as OL & T, there was no coverage for injuries that occurred off the designated premises. The courts explained that OL & T policies are intended simply to protect against liability arising from the condition or use of the building as a building, such as the typical "slip and fall" case. Those courts reasoned that affording a broader interpretation to the policy's language conflicted with its purpose and provided the type of coverage that the insured could have achieved by purchasing CGL coverage.

In these two categories of cases, the critical determination was whether the policy provided CGL or OL & T coverage. Only where the language clearly and unambiguously supported an interpretation that it was an OL & T policy did the analysis end without further inquiry.[5]

Similar to the analysis used by courts when the policy provided CGL coverage, the first category mentioned above, some courts interpreting OL & T policies have looked beyond the type of policy to determine whether the parties intended the policy to cover injuries occurring away from the designated premises. *See On Air Entertainment Corp. v. Nat'l Indemnity Co.*, 210 F.3d 146 (3d Cir.2000); *Pierce–Dickerson Bonding Co. v. Southern Guar. Ins. Co.*, 503 So.2d 1219 (Ala.1987); *Sun Ins. Co. v. Hamanne*, 113 N.H. 319, 306 A.2d 786 (1973). In these cases, the courts recognized that the mere fact that the policies were OL & T policies did not necessarily require that the language be interpreted to preclude coverage for injuries occurring off the premises. Essentially, these courts favored a broad interpretation of the phrases "arising out of" and "necessary or incidental to," resulting in a conflict with the OL & T label that could only be resolved by looking to the policy as a whole and extrinsic evidence of the parties' intent to determine whether the policy covered off premises injuries of the type involved. These courts have suggested that, when there are other indications that the policy was intended to provide coverage for injuries "arising out of" or "necessary or incidental to" the insured's operation of its business, a court should determine whether there is a sufficient causal connection between the action leading to the injury and the insured's business.

Returning to the present case, we must keep in mind that this appeal is from the entry of summary judgment. As previously mentioned:

---

**5.** For example, in *Parliament Ins. Co.*, the court emphasized that the wording of the policy stated that the premium was based on the square footage of the insured premises.

If the language of the contract is ambiguous, extrinsic evidence may be consulted to determine the intention of the parties and whether the ambiguous language has a trade usage. Construction of the contract by the parties to it before the controversy arises is an important aid to interpretation of uncertain terms.

If the extrinsic evidence presents disputed factual issues, construction of the ambiguous contract is for the jury. The court may construe an ambiguous contract if there is no factual dispute in the evidence.

*Pacific Indemnity Co. v. Interstate Fire & Casualty Co.,* 302 Md. at 389, 488 A.2d 486 (citations omitted).

 Based on our review of the contract language and relevant case law, we conclude that the policy is ambiguous with respect to whether it provides coverage for the wrongful eviction that occurred on premises other than the premises designated in the policy. Therefore, we must remand the case to the circuit court for the receipt of extrinsic evidence. If the ambiguity cannot be resolved through extrinsic evidence, it should be resolved against the insurer. *See Dutta v. State Farm Ins. Co.,* 363 Md. 540, 556–57, 769 A.2d 948 (2001) ("Nevertheless, under general principles of contract construction, if an insurance policy is ambiguous, it will be construed liberally in favor of the insured and against the insurer *as drafter of the instrument.*") (quoting *Empire Fire & Marine Ins. Co. v. Liberty Mutual Ins. Co.,* 117 Md.App. 72, 97, 699 A.2d 482 (1997) (emphasis in original)); *St. Paul Fire & Marine Ins. Co. v. Pryseski,* 292 Md. 187, 199, 438 A.2d 282 (1981) (recognizing the "principle of contract construction that where one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against that party") (quoting *Truck Ins. Exch. v. Marks Rentals,* 288 Md. 428, 435, 418 A.2d 1187 (1980)). If the ambiguity is resolved against the insurer, such that coverage is not limited to a wrongful eviction occurring on the designated premises, the court shall resolve the factual question of whether the wrongful eviction arose out

of TSI's operation of the premises or operations necessary or incidental to the premises.

For the above reasons, summary judgment in favor of appellee was improper. The judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

**SUMMARY JUDGMENT IN FAVOR OF APPELLEE VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**