Fabricant, Judith, J.
INTRODUCTION
This action presents a dispute about insurance coverage under a designated premises limitation in a commercial general liability policy (“CGL”) issued by United States Liability Insurance Company (“USLIC”) to Harbor Club, Inc. & East Bay Management d/b/a Trader Ed’s (‘Trader Ed’s”). The parties in interest before the Court are USLIC and National Union Fire Insurance Company of Pittsburgh, Pa., which covered the claim under an umbrella policy after USLIC denied coverage. Before the Court are cross motions for summary judgment. For the reasons that will be explained, USLIC’s motion will be allowed, and National Union’s will be denied.
BACKGROUND
The record before the Court establishes the following facts as undisputed for purposes of the present motions.[1] Trader Ed’s operates a restaurant at 21 Arlington Street in Hyannis. USLIC issued a CGL policy to Trader Ed’s for the year May 21, 2005 to May 21, 2006. In its application for the policy, Trader Ed’s responded to questions regarding its classification and exposure by indicating that its business is as a restaurant, that it does not have any exposure with respect to any “athletic events,” that it does not sponsor any “sporting or social events,” and that it does not “provide any Off-Premises Catering Services.” The declarations page of the policy identifies the only premises owned, rented or occupied by the insured as 21 Arlington Street, Hyannis, and describes the “premium *79 classification” as “Restaurant — with sale of alcoholic beverages.”
The policy covers liability, within specified limitations, for bodily injury damage caused by an “accident” that occurs on premises owned or rented by the insured or because of the insured’s operations. Coverage is subject, however, to a “Designated Premises or Project Endorsement.” That endorsement appears on a separate page, which bears the heading, in large capital letters: “THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.” The endorsement states: “This insurance applies only to ‘bodily injury’ . . . arising out of: 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or 2. The project shown in the Schedule.” A schedule appears on the same page, which lists no premises or project, but states: “If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this Endorsement.” As indicated supra, the declarations page identifies the premises as 21 Arlington Street, Hyannis.
On June 22, 2005, Bacardi U.S.A., a supplier to Trader Ed’s, sponsored a Jimmy Buffet concert at the Tweeter Center in Mansfield. The concert was an annual event. Bacardi supplied tickets for various Trader Ed’s personnel, along with alcohol for tailgate parties, advertising and various promotional items. John Shea, Trader Ed’s owner, organized a group trip from Hyannis to the concert and a tailgate party. He rented a bus to transport people, and invited other Hyannis business owners to travel on the bus for a twenty-dollar fee, along with employees and customers of Trader Ed’s. Trader Ed’s supplied a gas grill, a frozen drink machine, food and drinks, equipment for the use of a disc jockey, and three employees (Shea, John Bearse, and Antonio Dias) to operate the grill. The purpose of Trader Ed’s involvement, according to Shea’s deposition testimony, was to promote its business and its employees’ morale. John Bearse, Trader Ed’s assistant manager, participated in planning and organizing the event, including supervising the transportation of the gas grill and other equipment and supplies from Trader Ed’s premises in Hyannis to Mansfield, and supervising its operation at the event. His training, as well as that of Shea and Dias, hád occurred at Trader Ed’s premises in Hyannis.
The tailgate party ended badly. The Trader Ed’s personnel had difficulty lighting the grill. Their efforts, which are alleged to have included Bearse pouring gasoline on the grill, resulted in an explosion, which injured Dias and Kimberly Mooney, a Hyannis business person who had traveled to the event on the Trader Ed’s bus. Dias received workers’ compensation benefits for his injuries, provided by Trader Ed’s workers’ compensation carrier, on the basis that he was injured in the course of his employment.
On January 11, 2006, Mooney filed suit in Norfolk Superior Court, naming Bacardi, Trader Ed’s, Shea and Bearse. She alleged that her injuries arose from negligence of Trader Ed’s and its employees in the conduct of the tailgate party and operation of the gas grill. Trader Ed’s tendered the case to USLIC for defense. USLIC declined, relying on the designated premises endorsement, and filed this declaratory judgment action on September 20, 2006. Trader Ed’s joined National Union, asserting that it was obligated to defend and indemnify under its umbrella policy. National Union assumed the defense of the Mooney case under a reservation of rights, and cross claimed in this action against USLIC, seeking a declaration that USLIC was obligated to defend and indemnify, and to reimburse National Union for its defense costs. While this case was pending, the Mooney case was settled, with National Union providing indemnification for Trader Ed’s and its employees.
The question presented by the present motions is whether USLIC’s policy covered Mooney’s claims, or whether it excluded those claims under the designated premises endorsement. A secondary question, raised by National Union’s motion, is whether, even if USLIC’s policy did not cover Mooney’s claims, USLIC was nevertheless obligated to provide a defense, and is therefore liable to National Union for its defense costs.
DISCUSSION
The interpretation of an insurance policy is a question of law for the court, see Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982), and where the terms of the policy are unambiguous, its interpretation is appropriate for summary judgment. See Sullivan v. Southland Life Ins. Co., 67 Mass.App.Ct. 439, 442 (2006). Where the provisions of an insurance policy are plainly expressed, the policy must be enforced in accordance with its terms, see Cody, 387 Mass. at 146, and interpreted in a manner consistent with what an objectively reasonable insured would expect to be covered. See McGregor v. Allamerica Ins. Co., 449 Mass. 400, 402 (2007); City Fuel Corp. v. National Ins. Co. of Hartford, 446 Mass. 638, 642-43 (2006). If, however, “the contract is ambiguous, doubts as to the meaning of the words must be resolved against the insurance company that employed them and in favor of the insured.” August A. Busch & Co. of Mass. v. Liberty Mut. Ins. Co., 339 Mass. 239 243 (1959). “A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” County of Barnstable v. American Fin. Corp., 51 Mass.App.Ct. 213, 215 (2001). An ambiguity is not created, however, simply because there is a controversy between the parties as to the interpretation of *80 the policy provisions. See Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).
The issue of coverage in this case depends on application of the designated premises endorsement. Under that endorsement, the USLIC policy provides coverage only if Mooney’s injury arose out of “(t]he ownership, maintenance or use” of Trader Ed’s premises at 21 Arlington Street in Hyannis, or of “operations necessary or incidental to those premises.”[2] The parties have identified no Massachusetts case law construing designated premises endorsements.[3] A small number of cases from other jurisdictions apply such provisions to varying factual scenarios, reaching varying results. The cases that seem most pertinent are four: Harkless v. Sylvester, 961 So.2d 535 (La.App. 2007); Union American Ins. Co. v. Haitian Refugee Ctr., 858 So.2d 1076 (Fla. 2003); On Air Entertainment Corp. v. National Indemnity Co., 210 F.3d 146 (3rd Cir. 2000); and American Guarantee and Liab. Ins. Co. v. 1906 Co., 129 F.3d 802 (5th Cir. 1997).
In Harkless, 961 So.2d at 536, the insured, who operated a jazz lounge, purchased an adjacent property with an abandoned dilapidated building. It was alleged that he failed to secure the building adequately, leaving it available to vagrants, who started a fire, which damaged a neighboring building. Id. Although there was evidence that th'e insured had bought the adjacent property “in furtherance of his business,” a divided panel of the Louisiana Court of Appeal held that the designated premises endorsement precluded coverage because there was no “causal connection" between the occurrence and the designated premises.[4] Id. at 537.
In Union American Ins. Co., 858 So.2d at 1077, the insured organized a rally about a mile from its headquarters. A shooting death occurred at the rally, allegedly as a result of negligence by the insured in providing for security. Id. The Florida Appeals Court held that the event was excluded under the designated premises endorsement, because it occurred “at a location far removed from, and in a manner unrelated to, the Center described in the policy.” Id. The Court observed that the designated premises endorsement “effectively converted the [general commercial liability] policy into the equivalent of a premises or owner’s landlord’s and tenant’s” policy. Id. at 1078, n.l. Although the event causing the injury was necessary or incidental to the insured’s business, that did not, in the Court’s view, make it necessary or incidental to the use of its premises. Id. at 1078. The Court observed that “providing coverage on this ground involves a judicial rewriting of the policy by substituting ‘business’ for the policy word ‘premises.’ This is a process in which we may not engage.” Id.
On Air Entertainment Corp., 210 F.3d at 148, involved an OLT policy issued to a television production company. The claims in issue, alleging negligent hiring and supervision by the insured, arose from rapes committed by a host of the insured’s shows during off-premises social encounters with underage girls who had appeared on the shows. Id. The Court held that no coverage was available, because the events giving rise to the claim lacked any “causal connection to the insured premises.” Id. at 152.
American Guarantee and Liab. Ins., 129 F.3d at 805, arose under Mississippi law. The insured, a bottling company that had a CGL policy with a designated premises endorsement listing as the premises the site of its bottling operation, established a division to operate a photography studio at a site more than a mile away. Id. at 804. Decision making regarding the photography business occurred at the bottling company’s premises, although the operations of the photography business occurred at the separate site. Id. Claims arose alleging intentional torts by the individual who managed the photography studio, and negligence of the insured company and its CEO in hiring and supervision of and entrustment to him. Id. The Court held that the policy excluded coverage for the individual’s conduct, which occurred at the separate site, as well as vicarious claims against the company based on that conduct. Id. at 806. As to the negligence claims against the company and its CEO, however, the Court found a causal connection with the designated premises based on the decision-making conducted at that site. Id. at 807. The Court found support for that conclusion in the fact that the policy was a CGL policy, designed to cover the nature of the enterprise, rather than an OLT policy, designed to cover a building. Id. at 808.[5]
Here, USLIC argues that the claim arises from a purely social event, entirely unconnected to Trader Ed’s business, and that even if the event was connected to the business, it did not involve ownership, maintenance or use of the premises, or activities necessary or incidental to the premises. The Court is not persuaded by the first prong of the argument, but is persuaded by the second. The evidence offered would support a finding that Trader Ed’s sponsored the tailgate party to promote its business and the morale of its employees. Those are business purposes. See Boston Chamber of Commerce v. Assessors of Boston, 315 Mass. 712, 719 (1944) (where the court held that the promotion of business was a business purpose, rather than a charitable purpose). The event was therefore incidental to Trader Ed’s business, or could be found to be so if the case were to go to trial.
As the Florida Appeals Court pointed out in Union American, 858 So.2d at 1078, however, what is incidental to a business is not necessarily incidental to the premises on which the business is conducted. The policy language here, as in that case, requires that the injury arise from some activity necessary or incidental to the premises, not just the business. As that Court *81 observed, this Court is not free to rewrite the policy so as to change “premises” to “business.” Id. For the policy to provide coverage, there must be a causal connection between the event giving rise to the injury and the designated premises.
In this Court’s view, the facts established by this record do not supply the required causal connection. The event occurred far from the premises, and did not serve any purpose related to the premises, as distinct from the business. As National Union points out, the grill and other equipment and supplies were normally stored at the premises and were transported from there to the Tweeter Center, but those facts are of little significance. Transportation of equipment and supplies for use off site does not relate to the premises— indeed, it removes the instrument of the injury from the insured premises. The record also shows that any training of Bearse and the other employees occurred at the premises, but Mooney’s complaint did not allege any deficiency in training. The negligence alleged in the complaint, rather, was in organization of the event and control and use of the gas grill at the event.
Although the record does not address the point directly, it maybe inferred that decision making about the event occurred at the premises. On that basis, the reasoning of American Guarantee, 129 F.3d at 808-09, would extend coverage to Trader Ed’s and its decision-making personnel (presumably Shea) for Mooney’s direct claims against them, although not for vicarious claims. In this Court’s view, however, that reasoning would effectively rewrite the policy in the manner the Florida Court cautioned against in Union American. 858 So.2d at 1078. Of necessity, a business’s decision-making about virtually all of its activities is likely to occur at its premises. If that is enough to connect all its activities to the premises, then a designated premises endorsement excludes nothing related to the business, regardless of any relationship with the premises. Such an interpretation would effectively nullify the endorsement. See J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795 (1986) (contract to be construed “to give reasonable effect to each of its provisions”).
National Union cites four cases in which courts have construed the phrase “necessary or incidental” to the insured premises as susceptible of an interpretation broad enough to encompass activities at a distant location that relate to the insured’s business, but not to its premises: Avemco Ins. Co. v. Aerotech Ltd., 677 F.Sup. 35 (D.Mass. 1987); Sallie v. Tax Sale Investors, Inc., 149 Md.App. 141 (Md.App. 2002); Southeast Farms, Inc. v. Auto-Owners Ins. Co., 714 So.2d 509 (Fl.App. 1998); and Southern American Ins. Co. v. Guaranty National Ins. Co., 1986 Ohio App. Lexis 6558 (Ohio Ct.App. 1986). Review of these cases reveals that in each instance the Court relied on other language in the policy that supported a broad interpretation, or created an ambiguity.
Avemco, in which the District Court for the District of Massachusetts applied Vermont law, reached the cited conclusion in the unusual context of an OLT policy that specifically provided coverage for specified off-site activities unrelated to the premises.[6] 677 F.Sup. at 38. Sallie, under Maryland law, also involved specific policy language that supported a broader interpretation than would otherwise arise from the language involved here. 149 Md.App. at 152-53. The policy in Sallie, “designated as a ‘Spectrum Policy,’ which implies broad coverage of a variety of risks,” id. at 159, defined “personal injury” to include injury resulting from wrongful eviction, a risk inherent in the insured’s business of acquiring property by tax sale. Id. at 153. Since the designated premises was the office of the insured, the policy could cover injury from wrongful eviction only if it extended to business operations occurring at locations other than the designated premises. Id. at 159. Under these circumstances, the Court held the policy language ambiguous. Id. at 162.
In Southeast Farms, similarly, application of the designated premises provision according to its terms would have nullified a provision extending coverage to “advertising injury.” 714 So.2d at 512. In that context, the Court found the policy language ambiguous.[7] Id. In Southern American, the Court relied on an endorsement extending coverage to employees “as respects the named operations,” a phrase that it construed to suggest that “coverage is extended to operations from the insured premises, as well as operations on the insured premises.” 1986 Ohio App. Lexis 6558 at *18. The Court also found ambiguity in the language of the designated premises endorsement, which, unlike the language of the policy in issue here, referred to “operations necessary or incidental thereto.” Id, “Thereto,” the Court concluded, could refer either to the premises or to “the ownership, maintenance, or use of the insured premises,” which would encompass all operations of the business. Id. at *17. No such ambiguity appears in this policy, which refers to “operations necessary or incidental to those premises.” Nor have any other provisions in the policy in issue here have been called to the Court’s attention that appear in any respect comparable to those that led to the outcomes in these cases.
National Union also cites two other cases applying designated premises provisions: Indiana Ins. Co. v. Hardgrove, 2000 Ohio App. Lexis 2073 (Ct.App. Ohio 2000), and Dennis v. Jefferson Downs Corp., 636 So.2d 944 (La.Ct.App. 1994). Indiana Ins. held that no coverage was available because the activity giving rise to the injury involved a business entirely separate from that covered by the policy; the Court did not address whether activity incidental to the business conducted at the designated premises would have been covered. 2000 Ohio App. Lexis 2073 at *11. Dennis held that the insurer was obligated to defend because the un *82 derlying complaint alleged negligence in events that “were incidental to the premises or took place on the premises.” 636 So.2d at 947. Neither of these cases supports coverage here.
As noted supra, the Court must interpret the policy according to its plain terms, and in such a way as to effectuate the objectively reasonable expectations of the insured. Although the label “General Commercial Liability” suggests breadth, the plain language of the designated premises endorsement, which was prominently highlighted, imposes a clear limitation: the policy covers only injuries arising from “ownership, maintenance or use of the premises . . . and operations necessary or incidental to those premises.” The tailgate party at the Tweeter Center, many miles from the premises, may have been incidental to the business that Trader Ed’s conducted at the premises, but cannot reasonably be characterized as necessary or incidental to the premises itself. A reasonable insured, reading the plain language of the policy, could not have expected that an accident at that event would be covered.[8]
National Union argues that even if the policy does not cover, USLIC was nevertheless obligated to defend, and is therefore obligated to reimburse it for defense costs. The Court does not agree. It is well settled that the duty to defend is broader than the duty to indemnify. See Herbert A. Sullivan, Inc. v. Utica Mut Ins. Co., 439 Mass. 387, 394 (2003); Liberty Mut. Ins. Co. v. SCA Servs., Inc., 412 Mass. 330, 337 (1992). “The scope of an insurer’s duty to defend is based not only on the facts alleged in the complaint but also on the facts that are known or readily knowable by the insurer.” Timpson v. Trans-america Ins. Co., 41 Mass.App.Ct. 344, 346-47 (1996), quoting Desrosiers v. Royal Ins. Co. of America, 383 Mass. 37, 40 (1984) (internal quotations omitted). “Specifically, the process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.” Herbert A. Sullivan, 439 Mass. at 394, quoting Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 318 (1983) (internal quotations omitted). Where, however, “the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate.” Timpson, 41 Mass.App.Ct. at 347.
The complaint in issue here alleges that Mooney attended the event at the Tweeter Center; that the event was organized by Trader Ed’s, as well as by Bacardi; that Shea, and Bearse were employees of Trader Ed’s; that Trader Ed’s and Shea supplied and controlled the gas grill for the event; that they organized the event negligently; that Trader Ed’s, Shea, and Bearse negligently controlled the use of the grill; and that such negligence caused Mooney injury. Based on those facts, Mooney’s complaint asserts claims of direct and vicarious liability against Trader Ed’s and direct liability against Shea and Bearse. In this Court’s view, these allegations do not admit of an interpretation that would fall within the policy; to the contrary, they lie expressly outside the coverage of the policy. The allegations identify a site far from the covered premises, and include nothing to link the event to the premises. By alleging that the individuals were acting as employees of Trader Ed’s, the allegations do suggest that the event was somehow related to Trader Ed’s business. For the reasons already discussed, however, that does not bring the event within the coverage of the policy — a connection to the premises is required.
Nor did anything in the information that became available to USLIC after the filing of the complaint, and that it could have learned from investigation, add any basis for coverage. As discussed supra, the facts revealed in discovery, including that Trader Ed’s participated in the event for the purpose of promoting its business and employee morale; that it usually stored the grill and other equipment and supplies at the premises and transported them from there; and that training of its employees occurred there, all indicate that the event was incidental to Trader Ed’s business, but not to the premises. USLIC therefore had no duly to defend, and thus has no obligation to reimburse National Union for defense costs.
CONCLUSION AND ORDER
For the reasons stated, the Plaintiff/Defendant in Counterclaim, United States Liability Insurance Company’s Motion for Summary Judgment is ALLOWED. The Motion for Summary Judgment of Defendant, Harbor Club, Inc. & East Bay management d/b/a Trader Ed’s and Third Party Defendant, National union Fire Insurance Company of Pittsburgh, Pa., is DENIED. Judgment shall enter declaring that United States Liability Insurance Company had no obligation to defend or indemnify Harbor Club, Inc. & East Bay management d/b/a Trader Ed’s for the claims alleged in Mooney v. Trader Ed’s, Inc., Bacardi, U.S.A., Inc., John C. Shea and John W. Bearse, Norfolk Superior Court Civil Action No. 06-1166. All other claims are ordered DISMISSED.

 Where a dispute appears, the Court presents the version supported by the evidence that is most favorable to the position of National Union, as the party claiming coverage under USLIC’s policy. See Timpson v. Transamerica Ins. Co., 41 Mass.App.Ct. 344, 346 (1996) (where both parties move for summary judgment, evidence taken in light most favorable to insured); see also Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007) (court looks at the evidence in light most favorable to non-moving party); County of Barnstable v. American Fin. Corp., 51 Mass.App.Ct. 213, 215 (2001), quoting August A. Busch & Co. v. Liberty Mut Ins. Co., 339 Mass. 239, 243 (1959) (“Where language in an insurance policy is found to be ambiguous . . . doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured”).

 The policy language, read with the declarations page, leaves no room for doubt that the premises referred to in the endorsement are 21 Arlington Street in Hyannis. See American Guarantee and Liab. Ins. Co. v. 1906 Co., 129 F.3d 802, 806 (5th Cir. 1997).

 Makrigiannis v. Nintendo of America, Inc., 442 Mass. 675, 680 (2004), cited by National Union, did not involve a designated premises endorsement, and has no apparent relevance to this case. Utica Mut. Ins. Co. v. Fontneau, 70 Mass.App.Ct. 553, 558-60 (2007), also did not involve a designated premises endorsement, but addressed somewhat analogous issues in connection with a provision in a homeowner’s insurance policy limiting coverage to occurrences at the insured’s “residence premises” and “any premises used ... in connection with” the residence premises. The insured owned a parcel adjacent to the residence premises, and used it primarily for purposes related to his construction business, but also, by means of a dirt track, for access to the rear yard area of the residence premises where the insured stored antique cars he kept as a hobby. Id. at 554. On a claim brought by a visitor who was inj ured while using the dirt track to get to the location of the cars, the Appeals Court held that the event was within the coverage of the policy, because “[b]y both proximity and usage the accident site was sufficiently connected” to the residence premises to receive coverage. Id. at 560.

 One judge dissented, expressing the view that the case presented factual disputes for trial. Harkless v. Sylvester, 961 So.2d 535, 538 (La.App. 2007).

 One judge dissented, finding ambiguity in the designation of the premises. American Guarantee and Liab. Ins. Co. v. 1906 Co., 129 F.3d 802, 811 (5th Cir. 1997).

 The Court nevertheless held that coverage was precluded by another provision of the policy that limited such coverage to a particular category of claimants. Avemco Ins. Co. v. Aerotech Ltd., 677 F.Sup. 35, 43 (D.Mass. 1987).

 The Court in Southeast noted also that the insurer had conceded “that ‘incidental’ means incident to the main business purpose of the main business,” as opposed to the premises, a concession that “pretty much gives the ball game away.” Southeast Farms, Inc. v. Auto-Owners Ins. Co., 714 So.2d 509, 511 n.3 and 512 (Fl.App. 1998).

 The insured’s disclosures in the application for the policy also bear on its reasonable expectations. Having denied that it conducts any social or sporting functions or off-site catering, the insured could hardly expect coverage for its conduct in providing food service at a social event, albeit one conducted for business purposes. At oral argument, the Court inquired as to what USLIC would have done if the application had indicated that the insured would conduct such activities. The response was that it would have left out the designated premises endorsement and charged a higher premium.