DOMENGEAUX, Judge.
This is an appeal from a tort suit filed by John Paul Moore, plaintiff-appellant, against defendants-appellees, David Allen Lindeman, Susan Rafferty, Kay McElveen, Edmond A. Peveto, IV, Winter Cravens, and Mr. Lindeman’s liability insurer, Insured Lloyds. The plaintiff’s petition alleged basically that these defendants were liable to the plaintiff for property damage caused by horses which the defendants owned. Prior to trial in this matter, the defendants, Lindeman, Cravens, and Peve-to, were severed from the case by plaintiff because of the plaintiff’s inability to serve process on those defendants. After the plaintiff completed the presentation of his evidence, Susan Rafferty moved for and was granted an involuntary dismissal. The trial then proceeded and at the close of the evidence the district judge made a finding that the plaintiff had assumed the risk of his damages and dismissed his case against Mrs. McElveen and Insured Lloyds. The plaintiff appealed the decision of the district court only inasmuch as it pertains to defendants McElveen and Insured Lloyds.
On September 30, 1980, the plaintiff, John Paul Moore, leased a twenty acre tract of rural, semi-woodland to David Allen Lindeman. Mr. Moore testified that he was seeking a lessor with a “couple of horses” because the horses would maintain the leased premises by keeping down the underbrush and any offensive vegetation growing thereon.
Shortly after executing the lease Mr. Lindeman began the operation of a riding stable and canoe rental business on the leased property. The business known as “Bayou Riding Stables” provided horseback riding lessons, trail rides and boarding for horses owned by individuals.
During the course of the operation of Bayou Riding Stables, approximately twelve to fourteen horses were boarded on the premises. Testimony was offered that Winter Cravens owned one horse, Edmond A. Peveto, IV, owned one horse, Kay McEl-veen owned up to four horses, and the remaining horses were owned by David Lindeman.
The incident which gave rise to this lawsuit was first brought to plaintiff’s attention during the evening of September 10, 1982. He testified that he heard a “munching sound”, and went out to investigate and found “that there were several horses around this tree eating the bark.”
Further investigation by expert witnesses resulted in a finding that approximately 1100 trees had been damaged. The majority of these trees ranged in size from one inch in diameter to four inches in diameter (only 15 trees had a diameter greater than ten inches) and included various species, the majority of which were non-merchantable trees.
On March 23, 1983, the plaintiff filed his original petition for damages against David Allen Lindeman, Susan Rafferty, Kay McElveen, Edmond A. Preveto, IV, Winter Cravens, and Insured Lloyds, Mr. Linde-man’s liability insurer. The suit sought monetary recompense for the damage the property sustained. The petition alleged that the defendants were liable insólido inasmuch as the business known as Bayou Riding Stables was a joint venture by and between the named defendants.
A supplemental and amending petition was filed on October 11, 1983, which averred that the defendants Lindeman, McElveen, Peveto, and Cravens as owners of horses on the property, were strictly liable for the damages those horses caused.
On March 3, 1984, the plaintiff filed a motion to sever David Allen Lindeman, Winter Cravens, and Edmond A. Peveto, IV, from the lawsuit because plaintiff was unable to serve those defendants with process.
The case proceeded to trial, and following the completion of the plaintiff’s presentation of evidence, the defendant Susan Rafferty moved for and was granted an involuntary dismissal.
*1302 The trial proceeded and at the close of evidence the district court took the matter under advisement. The district judge subsequently assigned written reasons and rendered judgment in favor of Kay McEl-veen and Insured Lloyds and against the plaintiff and dismissed the case.
In his written reasons, the district judge ruled the plaintiff had assumed the risk of his injuries. The trial judge found that the plaintiff had the knowledge that horses eat bark and that he voluntarily accepted that risk. The district judge based his reasoning on a factual determination that horses regularly eat tree bark and that such behavior is an equinal characteristic. Mr. Moore testified that he previously owned goats which had eaten tree bark. Coupling Mr. Moore’s prior experience with goats and the predisposition of an equine to eat bark the district judge implied that Mr. Moore had knowledge that a horse would eat bark. The trial judge found that as Mr. Moore actively sought a tenant who owned horses so as to graze on the leased premises he had voluntarily allowed horses on the property. We are of the opinion that the district judge properly dismissed the plaintiffs case, however assumption of risk was not the proper reason for dismissing the case. We find that the plaintiff failed to prove his case against the defendant McEl-veen and an exclusion in the policies written by Insured Lloyds exonerates them from liability.
First, as to the alleged liability of Kay McElveen. At the time that the damage to the plaintiffs property occurred there were between eleven and thirteen horses on the leased premises. Mrs. MeEl-veen testified that she had “at the most” four horses on the property but that during the majority of time in the year she had her horses on the property she only had stabled one or two horses on the premises. The plaintiff put on no evidence that the defendant Mrs. McElveen’s owned horses which caused damages to the trees. Although the plaintiff testified he observed horses eating the bark of the trees, he did not identify with specificity those horses which caused the damages.
The plaintiff asserts that Louisiana Civil Code Article 2821 as interpreted by the Louisiana Supreme Court in Holland v. Buckley, 305 So.2d 113 (La.1974) is controlling in this case. In Holland v. Buckley, supra, the Supreme Court held:
“We hold, therefore, that the correct interpretation of Civil Code Article 2321 is as follows: When a domesticated animal harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict liability, as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event.”
However, in Dosch v. United States Fidelity & Guaranty Company, 392 So.2d 718 (La.App. 3rd Cir.1980), this Court held:
“Before the owner of an animal can be held liable under Article 2321, the plaintiff must first prove that the defendant’s animal was a cause-in-fact of the damage. Only after this causal relationship is proved, is the owner of the animal presumed to be at fault.”
Here, Mr. Moore the plaintiff did not prove that Mrs. McElveen’s animals were the cause-in-fact of his damage and he is therefore not entitled to recovery.
Second, we will discuss Insured Lloyds potential exposure to liability. Insured Lloyds provided two policies of liability insurance to David Lindeman, one for a boat rental operation and the other for a horse rental operation. Insured Lloyds has pleaded the provisions of its policies of insurance with David Lindeman as a defense.
Exclusion clause “(k)” of both of these liability policies excludes the insurer from liability for the following:
“(k) to property damage to
*1303 (1) property owned or occupied by or rented to the insured,
(2) property used by the insured, or
(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control; ...”
The trees which were damaged made up a part of the leased premises. The lease which was entered into evidence proves that at the time the damages were sustained David Lindeman rented the property. Furthermore, Mr. Moore’s testimony implies that at the time the damages were caused Mr. Lindeman was in the care, custody and control of the leased premises.
We therefore conclude that the loss suffered in this case is specifically excluded by the policy. See Home Insurance Company v. A.J. Warehouse, Inc., 210 So.2d 544 (La.App. 4th Cir.1968), and Borden, Inc. v. Howard Trucking, Inc., 454 So.2d 1081 (La.1983).
For the above and foregoing reasons the decision of the district court dismissing John Paul Moore’s case against Kay MeEl-veen and Insured Lloyds is hereby affirmed.
All costs on appeal to be assessed against plaintiff.
AFFIRMED.