714 So.2d 509 (1998)
SOUTHEAST FARMS, INC., Appellant,
v.
AUTO-OWNERS INSURANCE COMPANY, et al., Appellees.
No. 97-1802.
District Court of Appeal of Florida, Fifth District.
June 5, 1998.
Rehearing Denied July 15, 1998.
R. Matthews Miles, Jr. and Jeffrey K. Green of Miles & Green, Daytona Beach, for Appellant.
M. Jennifer Moorhead of Eubank, Hassell & Associates, Daytona Beach, for Appellee Auto-Owners Insurance Company.
GOSHORN, Judge.
Southeast Farms, Inc. appeals from the summary final judgment in favor of Auto-Owners Insurance Company. Auto-Owners instituted this declaratory judgment action, joining Southeast Farms and the plaintiffs in the underlying wrongful death actions, seeking a determination whether it was obligated to defend or indemnify Southeast Farms under the terms of its insurance policy. The trial court found that the accident did not involve the use of the premises specified in the policy and was not incidental to Southeast Farms' business, and thus the policy did not provide coverage for the claims alleged in the underlying complaints. It entered summary *510 judgment in Auto-Owners' favor. On appeal, Southeast Farms contends the policy did cover the incident or, at the least, the policy was ambiguous and should have been construed in favor of coverage. We agree and reverse.
Southeast Farms is a produce broker principally brokering potatoes. Its involvement in the underlying suits stems from the fact that it had brokered the sale of the Alabama-grown potatoes that were in the truck which collided with a Honda Accord in Virginia. The truck driver, John White, was killed, as were the Honda driver, Kathleen Tarbrake, and her six-year-old niece, Kelly Little. The Little and Tarbrake suits assert that Southeast Farms operated the potato farm in Henagar, Alabama, where the potatoes were grown and loaded. They allege that Southeast Farms negligently failed to inspect the condition of the truck on which it loaded its potatoes, negligently failed to determine the qualification of White to operate the tractor-trailer, and negligently failed to comply with the Federal Motor Carrier Safety Act.
Upon being served with the complaints, Southeast Farms asked Auto-Owners to provide a defense. Auto-Owners refused, asserting that it had no duty to defend under the terms of the endorsement entitled "Limitation of Coverage to Designated Premises or Project."[1] The only premises listed on the supplemental declarations page are Southeast Farms' Hastings and Florida City offices. Regarding these premises, the policy provides:
This insurance applies only to "bodily injury," "property damage," "personal injury," "advertising injury" and medical expenses arising out of:
1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises;....
Auto-Owners contended that the negligence asserted did not arise out of Southeast Farms' operations at the listed Florida premises and thus there was no coverage. It filed the declaratory judgment action to establish its rights and duties under the policy and moved for summary judgment under the terms of the policy.
Southeast Farms also moved for summary judgment. It filed the deposition of its vice president, Gary Allen. That deposition reveals that Southeast Farms is incorporated in Florida and operates out of an office in Hastings, Florida. It also maintains a winter office in Florida City. Gary Allen is a company salesperson. He explained that once he gets an order for a quantity of potatoes, he faxes the order to a farm that has the type of potatoes requested. Then, unless the buyer wants to arrange its own shipping, he contacts a shipping company to transport the potatoes from the supplier to the buyer. Southeast Farms does not grow potatoes, own or maintain any tractor-trailer rigs to transport potatoes, or provide any drivers. Southeast Farms has no ownership interest in Greeson Farms, the Alabama farm which grew the potatoes that were being hauled, nor does it have any ownership interest in the buyer of the potatoes. Southeast Farms did not supply the manpower to load the potatoes. Southeast Farms did not direct how the truck driver performed any function. Southeast Farms merely tells the trucking company, in this case Delanes Truck Brokers, where to pick up a load and where to deliver it. By happenstance, Gary Allen was present at Greeson Farms the night the brokered potatoes were loaded onto White's truck.
In the written order, the trial court found that it was undisputed that Southeast Farms had two Florida offices, its principal business is that of produce broker, and it does not engage in the business of trucking or hauling. It further found:
The Court finds the policy issued by Auto-Owners Insurance Company to Southeast Farms, Inc., is a designated premises policy and does not provide coverage for the injuries set forth in the Tarbrakes' and Littles' Complaints. The endorsement entitled *511 "Limitation of Coverage to Designated Premises or Project" is clear and unambiguous and excludes coverage for the injuries set forth in the Littles' and Tarbrakes' Complaints. The automobile accident did not involve ownership, maintenance or use of the "premises" specified in the policy and it was not incidental to Southeast Farms, Inc.'s business of acting as produce brokers.
The trial court concluded that Auto-Owners had no duty to defend or to indemnify Southeast Farms and entered summary judgment accordingly.[2]
Southeast Farms argues that the Designated Premises Endorsement, which provides coverage for damages "arising out of ... the ownership, maintenance or use of the premises shown in the schedule and those operations necessary or incidental to those premises," requires that Auto-Owners provide a defense in this suit. It asserts that the underlined language is broad enough to encompass business-related activity occurring away from the listed premises.
Auto-Owners answers that the immediate circumstance which caused the injury, along with the negligence leading to the injury, did not occur on the designated premises or arise out of the operation of Southeast Farms' main business purpose, and thus Auto-Owners has no duty to defend. It is correct that the alleged situs of Southeast Farms' negligent acts, Henager, Alabama, is not a covered premises. If the policy restricted coverage to the listed premises, the case would end here. However, the policy also covers "operations necessary or incidental to [the listed] premises."
Auto-Owners asserts that "operations necessary or incidental to those premises" pertains to the main business of the company, citing Volkswagen Insurance Co. v. Dung Ba Nguyen, 405 So.2d 190, 197 (Fla. 3d DCA 1981) ("Incidental ... means incident to the main purpose of the main business.") (quoting Peirson v. American Hardware Mut. Ins. Co., 249 N.C. 580, 107 S.E.2d 137 (1959)), rev. denied, 418 So.2d 1280 (Fla. 1982).[3] Southeast Farms' business is the brokering of potatoes, not trucking or hauling. Thus, Auto-Owners contends, the fact that Gary Allen happened to be present at Greeson Farms when the potatoes were being loaded was immaterialAllen's purpose was to establish a rapport and check the quality of potatoes and there is no allegation that either of those factors contributed to the underlying accident. Auto-Owners asserts that the moving of the potatoes from the potato farmer to the buyer, although incidental to the business of Delanes Truck Brokers, was not incidental to Southeast Farms' business.
We disagree with this argument. Certainly the act of obtaining transportation for brokered potatoes is an incident of the brokering of potatoes. While Auto-Owners' argument misses the point, it does highlight the root of the problem with this case, and that is the lack of clarity as to whether the policy is a general liability policy or a premises liability policy.
The front cover of the policy labels it a "Tailored Protection Insurance Policy." Inside, the form is entitled "Commercial General Liability Coverage Form." It expressly provides that for a premium of $552, Auto-Owners was providing "commercial general liability coverage." These factors suggest the policy was a general liability policy. On the other hand, the Limitations of Coverage endorsement states that the endorsement modifies the insurance provided by the commercial general liability coverage part and *512 limits coverage to the premises listed. Even at that, however, the endorsement specifically continues to cover "advertising injury," again indicating some aspects of continuing general liability coverage. With that existing ambiguity, the term "operations necessary or incidental to those premises" appears broad enough to include business operations necessary or incidental to the listed premises. Given Auto-Owners' own assertion that "incidental" means incident to the main business purpose of the main business, it must be concluded that even Auto-Owners itself recognizes that "premises" includes the business operated on the premises.
Auto-Owners cites Home Insurance Co. of Manchester v. Phillips, 815 F.Supp. 1471 (S.D.Fla.1993), affirmed, 26 F.3d 1121 (11 Cir.1994) and Parliament Insurance Co. v. Bryant, 380 So.2d 1088 (Fla. 3d DCA), cert. denied, 388 So.2d 1110 (Fla.1980) in support of its contention that the policy language excluded coverage for acts occurring off-site. These cases, however, are easily distinguished. The policy in each of those two cases was more clearly a premises liability policy than the policy under consideration in the instant case. The Home Insurance policy was entitled as such, it limited the coverage to a specific premises, and it provided coverage for only bodily injury and property damage. The instant policy is not so clearly labeled and it provides coverage for "advertising injury" in the very endorsement that Auto-Owners now argues is a premises liability restriction. Likewise, Parliament Insurance is not truly supportive of Auto-Owners' argument because it was decided on the basis of an exclusionary clause clearly excepting from coverage bodily injury and property damage which occurred off the premises. No such exclusion exists in the instant policy.[4]
Because the ambiguity surrounding the endorsement language "arising out of ... the ownership, maintenance or use of the premises shown in the schedule and those operations necessary or incidental to those premises" must be resolved in favor of coverage, we reverse and remand for entry of judgment in favor of Southeast Farms. See Premier Ins. Co. v. Adams, 632 So.2d 1054 (Fla. 5th DCA 1994) (policy language which is ambiguous is generally to be construed against the insurer).
REVERSED and REMANDED.
COBB and W. SHARP, JJ., concur.
NOTES
[1] The policy itself is entitled "Tailored Protection Insurance Policy" and is a commercial general liability policy. Auto-Owners describes the policy as "a Tailored Protection Insurance policy where the Commercial General Liability is limited to coverage for designated premises or projects."
[2] The language of the order suggests that the trial court may have been swayed by Southeast Farms' apparent lack of liability on the underlying tort claim. Regardless of the fallacy of the claims against Southeast Farms, the sole issue in this declaratory judgment action is whether Auto-Owners had a duty to defend arising from the terms of its policy.
[3] Auto-Owners' assertion and citation to Nguyen's definition of incidental is surprising since the policy language at issue in Nguyen was so clearly different from the policy language at issue here. The Nguyen policy specifically covered operations necessary or incidental to the business; here, the policy does not include an express business reference. Auto-Owners' adoption of the definition of "incidental" as including incident to the business purpose pretty much gives the ball game away.
[4] Further, both Home Insurance and Parliament Insurance were "owners,' landlords' and tenants'" policies. In 11 George J. Couch, Couch on Insurance 3d s. 132:59 (1997), a distinction between OL & T policies and general liability policies is recognized:

The purpose of such insurance [landlord-tenant] is simply to protect against liability arising from the condition or use of the building as a building. Accordingly, landlord-tenant insurance must be distinguished from insurance against liability arising from the nature of the enterprise or activity conducted within the insured premises. Liability arising out of a business enterprise is commonly covered by commercial general liability policies....
The cited cases correctly recognized the distinction and ruled accordingly. In contrast, the policy in the instant case is labelled a commercial general liability policy, but Auto-Owners attempted to turn it into a premises liability policy by endorsement. The ensuing ambiguity must be held against it.