**CHARTER OAK FIRE INSURANCE COMPANY, Travelers Indemnity Company and Essex Insurance Company, Plaintiffs,**

v.

**Russ COLEMAN d/b/a Johnny's Bad Ass Motorcycles, P.W.C., Inc. and Lawrence Gray, Defendants.**

**Civil Action No. 3:01CV–553–H.**

United States District Court,
W.D. Kentucky,
At Louisville.

July 24, 2003.

Adam P. Altman, Cozen & O'Connor, Charlotte, NC, David M. Bessho, Cozen & O'Connor, Atlanta, GA, Walter J. Swyers, Jr., Wayne J. Carroll, Matthew Ronald Rheingans, MacKenzie & Peden, Louisville, KY, for Plaintiffs.

Armer H. Mahan, Jr., Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, KY, for Defendants.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

This declaratory judgment action concerns the coverage provided by a commercial general liability policy which Essex Insurance Company ("Essex") issued to Russ Coleman d/b/a Johnny Bad Ass Motorcycles. For the reasons explained in this memorandum, the Court concludes that under the CGL policy, Essex is liable for all damages assessed against Russ Coleman except damage to that portion of the building occupied by Johnny Bad Ass Motorcycles ("Johnny BAM").

### I.

For the most part, the facts are not in dispute. On March 13, 2000, Essex issued a CGL policy to Russ Coleman ("Coleman") d/b/a Johnny Bad Ass Motorcycles, policy number 3CC5462, with effective dates of March 13, 1999, to March 13, 2000 (the "CGL" or the "Policy"). During this time period Coleman leased commercial building space in a building owned by Edwin Parrot located at 4835 Poplar Level Road, Louisville, Kentucky. Coleman operated two separate businesses out of the leased space—Advanced Auto Electric and Johnny BAM. Advanced Auto Electric was an auto electric rebuild and repair shop. Johnny BAM was a motorcycle dealership and repair shop. Another tenant, L/A Auto Cleaning, also leased space in the building. On February 16, 2000, Lawrence Gray, one of Coleman's employees, caused a fire which caused substantial damage to the entire building.

Coleman did not directly notify Essex about the fire. He did notify his insurance agent, the Clarkson Agency, which in turn notified Essex on February 28, 2000. Thereafter, Essex hired Tom Noel of Crocker Claims Service to investigate the cause and nature of the fire. In conjunction with his investigation, Noel met with Coleman on March 3 and March 7, 2000, to discuss the fire. Noel's investigation indicated that "the fire was caused by a Suzuki motorcycle being repaired at Johnny BAM

by Steve Gray and subsequent failure of fire extinguishers to perform properly." Sometime later, counsel for Essex attempted to supplement its investigation by having Coleman appear for an examination under oath ("EUO"). On four separate occasions, November 8, November 16, December 3, and December 6, 2001, counsel for Essex sent correspondence to Coleman asking him to submit to an EUO. Coleman did not respond.

At the time of the fire, Parrot's building was insured by Charter Oak Fire Insurance Company ("Charter Oak") and L/A Auto Cleaning had insurance through Travelers Indemnity Company ("Travelers"). Parrot and L/A Auto Cleaning filed separate property loss claims in accordance with their respective insurance policies. Charter Oak paid Parrot $398,641.00 and Travelers paid L/A Auto Cleaning $25,904.24. Charter Oak filed a subrogation action against Coleman alleging his negligence in connection with causing the fire. Travelers joined as a plaintiff in the subrogation action by amendment.

Meanwhile, Essex filed the present declaratory judgment action against Charter Oak, Travelers, and Coleman seeking a declaration that even if Coleman was liable for the fire, the Essex CGL Policy did not cover the fire loss under these circumstances. The Court consolidated the two actions.[1] The insurance companies have now filed cross motions for summary judgment regarding the coverage under the CGL Policy. Charter Oak and Travelers maintain that Essex is responsible for the claims Charter Oak and Travelers paid to Parrot and L/A Auto Cleaning. Essex disagrees and sets out three alternative arguments in support of its position: (1) Coleman's failure to timely report the fire and cooperate in litigation constitutes a

material breach of his policy relieving Essex of its obligations under the policy; (2) Coleman's policy excludes coverage for all property damage caused by fire; and (3) Coleman's policy excludes damage to property that is owned, rented or occupied by the insured.

## II.

■■■ Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In Kentucky, the interpretation and construction of insurance contract provisions are questions of law for the court, unless disputed facts are involved. *See Ayers v. C & D General Contractors*, 237 F.Supp.2d 764, 768 (W.D.Ky.2002). As this Court has previously stated, recent pronouncements by the Kentucky Supreme Court require the Court to construe the contract against the insurer, but not to do so in such a way that changes the purpose of the contract. *See id.* at 764 n. 5. An insurance policy is to be liberally construed in favor of the insured, if the language is ambiguous, and the policy is susceptible to more than one reasonable interpretation. Exclusions should be strictly construed and must be clearly stated to apprise the insured of the limitation. Where an exclusion is susceptible to two reasonable interpretations the interpretation favorable to the insured must be adopted. Still, the policy must receive a reasonable interpretation consistent with the parties' intent. A nonexistent ambiguity must not be utilized to resolve a policy against the company. *See id.; Bituminous Cas. Corp. v. RPS Co.*, 915 F.Supp. 882, 883–84 (W.D.Ky.1996);

---

1. Earlier this spring, the Court entered summary judgment in favor of Charter Oak and Travelers against Coleman on the issue of liability, but indicated that it would hear proof on the issue of damages, if necessary.

*Peoples Bank & Trust Co. v. Aetna Casualty & Surety Co.,* 113 F.3d 629 (6th Cir. 1997); *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.* 870 S.W.2d 223 (Ky.1994); *Eyler v. Nationwide Mut. Fire Ins. Co.,* 824 S.W.2d 855, 859 (Ky. 1992); *Motorists Mutual Ins. Co. v. RSJ, Inc.,* 926 S.W.2d 679, 680 (Ky.App.1996). Keeping these principals of contract interpretation in mind, the Court turns now to the dispute at hand.

### III.

Essex's first argument against coverage is that Coleman forfeited his right to recover under his CGL Policy by failing to timely notify Essex of the fire and refusing to submit to an EUO. The CGL Policy requires that Coleman notify Essex of any claim and cooperate with Essex in the investigation or settlement of the claim.[2] The purpose of such a provision is to protect the interests of the insurer by ensuring helpful cooperation from the insured so that the insurance company can determine how and whether to contest the claim. *See* 14 Lee R. Russ & Thomas F. Segalla,

*Couch on Insurance* § 196.30 (3d ed.1999) (hereinafter *"Couch on Insurance"*).

 Kentucky recognizes the doctrine of substantial compliance with regard to duties under insurance contracts. *See Hill v. Union Central Life Ins. Co.,* 513 S.W.2d 808, 809 (Ky.1974); *Westchester Fire Ins. Co. v. Gray,* 240 S.W.2d 825, 827 (Ky.1951). The Court finds that as a matter of law, Coleman substantially complied with his notification duty by informing his local insurance agent. An insured often only deals directly with the agent and never has personal contact with the insurer. It is entirely understandable that Coleman may have believed contacting his local agent was sufficient notification. In the end, although Coleman may not have precisely followed the CGL Policy notification requirements, Essex received the information it needed from a reliable third party.

 Regardless, Essex would face another hurdle before it could deny coverage based on a failure to notify. Under Kentucky law, an insurance provider must show prejudice in order to defeat liability

---

**2.** The terms and conditions of Coleman's CGL policy state in pertinent part:

SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS
2. Duties In The Event Of Occurrence, Offense, Claim Or Suit.
 a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include
 (1) How, when and where the "occurrence" took place;
 (2) The names, addresses of any injured persons and witnesses; and
 (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
 b. If a claim is made or "suit" brought against any insured you must:
 (1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.
You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
 c. You and any other involved insured must:
 (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with claim or "suit";
 (2) Authorize use to obtain records or other information;
 (3) Cooperate with us in the investigation or settlement of this claim or defense against the "suit"; and
 (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

based on a breach of a notice provision. *See Jones v. Bituminous Casualty Corp.,* 821 S.W.2d 798 (Ky.1991). Essex failed to submit any facts or evidence that it suffered prejudice due to Coleman's failure to directly notify it of the fire. *See id.* In fact, the evidence is to the contrary. Essex learned about the fire from the Clarkson agency within twelve days and had its agent investigating and meeting with Coleman within fifteen days. Based on its investigation, Essex was able to discover exactly how the fire occurred. Without demonstrating some type of prejudice, Essex is not entitled to deny coverage on this basis. *See id.*

 Essex also argues that it should be relieved of its obligations under the CGL because Coleman failed to submit to an EUO. The difficulty with this argument is that Coleman's CGL is actually silent about the insured's duty to submit to an EUO. The policy states only that the insured is to cooperate in the investigation or settlement of the claim or defense. This distinction is quite significant. The

cases relied upon by Essex all involved policies which contained an express EUO provision, not merely a general cooperation clause.[3] Therefore, these cases are neither controlling nor persuasive because Coleman's CGL simply states that the insured must: "Cooperate with us in the investigation or settlement of this claim or defense against the 'suit.'" The Court declines to create in the Essex CGL Policy an affirmative duty to submit to an EUO where none exists in writing.

 The only remaining question is whether Coleman substantially complied with his independent duty to cooperate with Essex regarding his claim. The analysis is similar to that which this Court undertook in Section III. A. of this Memorandum. "In general, substantial compliance means that a party has '[c]ompli[ed] with the essential requirements, whether of a contract or of a statute.'" *In re Eagle–Picher Industries, Inc.,* 285 F.3d 522, 525 n. 3 (6th Cir.2002) (*citing* Black's Law Dictionary 1428 (6th ed.1991)). "The pur-

**3.** In *Temple v. State Farm Mut. Ins. Co.,* 548 S.W.2d 838 (Ky.1977), the insureds brought an action against their insurer to recover damages under the uninsured motorist provisions of their automobile liability policy. *See id.* The Kentucky Supreme Court held that where the policy required the insureds, as a condition precedent to coverage, to submit to an EUO the insureds' refusal to provide their insurer with sworn statements as to details of the accident and the nature and extent of their injuries justified denial of coverage. *Id.* The court, however, was careful to point out that submitting to an EUO was an express condition precedent of the Temples' automobile insurance policy that was separate and distinct from their general duty to cooperate with their insurer. In making this important distinction, the Court explicitly stated that: "By denying State Farm such information reasonably necessary to its performance under the contract, *the Temples did not breach the cooperation clause of the policy,* but did breach a valid condition precedent to their coverage." *Id.* at 840 (emphasis added).

The Sixth Circuit's recent unpublished decision, *Lewis v. State Farm Fire and Casualty Co.,* 238 F.3d 422, 2000 WL 1828711 (6th Cir.2000), can be distinguished on identical grounds. In *Lewis* the insureds brought a bad faith claim against State Farm for denying a fire claim they made under their policy. State Farm maintained that it acted reasonably because the Lewises did not submit to an EUO, a necessary precondition for payment under the policy. The Sixth Circuit reasoned that the Lewises did not substantially comply with the requirements of their policy by submitting to an informal questioning by State Farm shortly after the fire because the policy expressly required a statement under oath. *See id.* The Court agrees with the Sixth Circuit that where a policy requires as an express precondition to payment that the insured submit to an EUO giving a recorded interview is not sufficient. *See id.* In the present case, however, the policy at issue contains no such express condition precedent.

pose of a cooperation clause is to enable the insurer to obtain relevant information concerning the loss while the information is fresh, to enable it to decide upon its obligations, and to protect itself from fraudulent and false claims." *Couch on Insurance* § 199.4. Coleman twice met with Essex's investigator to discuss the fire in question. Essex does not allege any lack of candor or any misleading during these interviews. Coleman supplied the investigator with enough information to determine the origin and cause of the fire. The Court concludes that Coleman substantially complied with his duty to cooperate by actively and cooperatively participating in Essex's initial investigation, notwithstanding his subsequent failure to submit to an EUO.

## IV.

■ Essex also seeks a declaration that its "Fire Damage Legal Liability" provision excludes coverage for all the fire damage. Charter Oak and Travelers claim that this exclusion only eliminates coverage for fire damage to the space rented by Coleman. Accordingly, Charter Oak and Travelers maintain that Essex is liable for the fire damage to the remainder of Parrot's building.

To resolve this dispute the Court must determine the meaning of the Fire Damage Legal Liability provision. Because a contract must be construed as a whole, the first step in resolving the meaning and applicability of the Fire Damage Legal Liability exclusion is to examine how the exclusion works within the policy at large. *See Cook United, Inc. v. Waits,* 512 S.W.2d 493, 495 (Ky.1974).

As a general matter, the CGL policy provides quite broad coverage which would facially include coverage for fire damage:

SECTION I—COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.
 a. We will pay those sums that the insured becomes obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

 · · · · ·

15. "Property Damage" means:
 a. Physical injury to tangible property, including all resulting loss of use of the property....
 b. Loss of use of tangible property that is not physically injured....

The policy also contains numerous exclusions that restrict and limit this general grant of coverage. None of the standard exclusions listed in "Section 2. Exclusions" pertain to fire damage. However, the policy does exclude coverage for damage to the insured's own property:

2. Exclusions.
 This insurance does not apply to:
 j. Damage to Property
 "Property damage" to:
 (1) Property you own, rent or occupy;
 (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;
 (3) Property loaned to you;
 (4) Personal property in the care, custody, or control of the insured;
 (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of the operations; or
 (6) The particular part of any property that must be restored, repaired,

or replaced because "your work" was incorrectly performed on it.

While this language generally excludes coverage for property damage to the insured's own property, the general policy provisions contain an exception where the damage results from a fire:

> Exclusions c. through n. do not apply to damage by fire to the premises while rented to you or temporarily occupied by you with the permission of the owner. *A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III.)*

. . . . .

SECTION III—LIMITS OF INSURANCE

6. [T]he Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire

The only logical reading of these provisions is that together they work to exclude coverage for property damage to property owned, rented or occupied by the insured *unless* the damage is caused by fire. If property owned, rented or occupied by the insured is damaged by fire the Policy will provide coverage for the damage subject to the "Fire Damage Limit." Typically, the "Fire Damage Limit" would be considerably less than the standard policy limits.

It is within this general framework that the Court must examine the "Exclusion—Fire Damage Legal Liability" upon which Essex bases its argument that the CGL excludes coverage for *all* judgments for damage as a result of a fire. The Limited Coverage Endorsement Page, Form M/E–005 states:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

EXCLUSION—FIRE DAMAGE LEGAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

1. The last paragraph of 2. Exclusions of Coverage A. (Section I) does not apply.
2. Paragraph 6. of LIMITS OF INSURANCE (Section III) does not apply.
3. Any reference in the Declarations to "Fire Damage Liability" does not apply.

The excluded paragraphs referred to in the endorsement do not even mention coverage for fire damage to property not owned, rented or occupied by the insured. For example, the first reference merely deletes the paragraph which modified the exclusion for damages to leased property. The second reference is related. Paragraph 6 of the Limits of Insurance section, which the endorsement specifies does not apply, defines the "Fire Damage Limit," as "damages suffered because of 'property damage' *to premises, while rented to you or temporarily occupied by you* with permission of the owner, arising out of any one fire." (emphasis added). The third reference is to the Limits of Insurance portion of the Policy which states that the "Fire Damage Limit" is "Excluded."

Clearly, the Policy suffers from a degree of linguistic contortion. One should not simply reward the perpetrator, but search for a cure: a reasonable and consistent interpretation. In the Court's view the Fire Damage Limit, excluded by the endorsement, applies only to damage done to the insured's property, and does not apply to the damage done to other property as a result of fire. As such under the general

definition of property damage, damage caused by fire suffered to property other than property owned, rented or occupied by the insured is covered under the Policy.

The Court finds some support for its interpretation in *USF Ins. Co. v. Mr. Dollar. Inc.*, 175 F.Supp.2d 748 (E.D.Pa.2001). In that case, the insured, Mr. Dollar, leased a retail store which was only one unit of several in a building owned by another party. A fire occurred in the space leased by the Mr. Dollar which caused damage to the entire building. The building owner's insurer, USF, filed a subrogation action against Mr. Dollar for negligently starting the fire. USF settled with Mr. Dollar who assigned its rights in the CGL policy to USF. In construing the policy, the district court held that the Fire Damage Limit set forth in the policy only limited the insurer's "liability for fire damage to the premises leased by the [the insured] and does not limit liability for fire damage to other property." *Id.* at 751.

Essex argues that the title of the Endorsement "EXCLUSION—FIRE DAMAGE LEGAL LIABILITY," means that all coverage for fire damage is excluded. However, Kentucky courts have cautioned that the caption or title of an endorsement cannot override the provisions below it where those provisions unambiguously show the intent of the parties. *Kemper Nat'l Ins. Co. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky.2002) (*relying upon* 2 Couch on Insurance 2d § 4:38.) The language of the endorsement unquestionably refers only to coverage for fire damage done to the insured's own property.

In other portions of its policy, Essex left no doubt of its intent to exclude certain types of claims. *See* Combination Endorsement M /E–001. In Section 5 of the Combination Endorsement Essex clearly and unambiguously excluded coverage for certain occurrences. Section ·5 begins "where there is no coverage, there is not duty to defend. This insurance does not apply to any claim, suit or cost arising out of: ..." The Section goes on to list a number of specific instances where the policy does not supply coverage such as where the damage is caused by pollution, asbestos, assault, discrimination, and year 2000 computer-related and other electric problems. *See id.* Had Essex wanted to exclude all coverage for fire damage, it would have been easy to do so.

The Court concludes that as a matter of law, the subject exclusion does not exclude all damages arising out of the fire. Rather, it excludes coverage only for fire damage to property owned or occupied by Coleman dba Johnny BAM. This is the only reasonable and logical reading of the exclusion. Thus, the exclusion serves only to prevent coverage for liability for fire damage to the premises leased by Coleman, not liability for damage suffered to other parts of Parrot's building.

## V.

■■■ Essex argues that even if the CGL policy is applicable, it is not responsible for the entire sums paid by Charter Oak and Travelers because its policy contained an exclusion for damage to property owned, rented, or occupied by the insured.[4] The policy provides in relevant part:

---

4. In some respects arguments about Essex's ultimate monetary liability under the CGL are premature. While the Court entered summary judgement against Coleman on the issue of liability, it indicated that it would hear proof on the issue of damages if necessary. At this juncture, no monetary judgment against Coleman has been entered. Nevertheless, given the declaratory nature of the present dispute the Court will endeavor to define how in its opinion the policy will operate once a monetary judgment is entered against Coleman.

1. Insuring Agreement

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

. . . . .

2. Exclusions.

This insurance does not apply to:

. . . . .

 j. "Property damage" to:

 (1) Property you own, rent or occupy;

Charter Oak and Travelers do not dispute the existence of this exclusion. Instead, they argue that the exclusion does not apply to third-party liability claims.

However, the language seems to clearly exclude coverage for damage to property the insured owns, rents or occupies. Courts should not strain to find an ambiguity in an insurance contract where none exists merely to afford added insurance protection to a party. *See First Commonwealth Bank of Prestonsburg v. West,* 55 S.W.3d 829, 836 (Ky.App.2000). The provisions at issue actually is quite common to liability insurance contracts. *See Couch on Insurance 3* § 126:16 ("It is not uncommon for liability insurance contracts of certain kinds to exhibit some concern for liability related to property over which the insured has some right of dominion. The two most common are exclusions related to property in the insured's 'care, custody, and control' and to property 'owned, rented, or occupied' by the insured.") The primary function of such exclusions is to "prevent the insured from using a liability insurance policy as if it provided property insurance" and insulate against "the 'moral hazard' problem where an insured has less incentive to take precaution owing to the existence of insurance." *Dryden Oil Co. of New England, Inc. v. Travelers Indem. Co.,* 91 F.3d 278, 284 (1st Cir.1996) (internal citations omitted).

The "own, rent or occupy" exclusion provision clearly and unambiguously excludes coverage for property damage to any portions of the building owned, rented or occupied by "Russ Coleman dba Johnny Bad Ass," the named insured. Even though Coleman may be liable for all the damages Parrot and L/A Auto Cleaning suffered, under the CGL policy Essex will be liable only for the damages to portions of the building which Coleman does not occupy. *See Paktank Louisiana, Inc. v. Marsh & McLennan, Inc.,* 688 F.Supp. 1087, 1092 (E.D.La.1988) (holding that coverage for property damage plaintiff sustained to his dock was excluded under owned, occupied or rented exclusion because the property was being used by the insured at the time the insured caused damage to the plaintiff's dock); *Jack A. Halprin, Inc. v. Hermitage Ins. Co.,* 58 Conn.App. 598, 753 A.2d 954, 956 (2000) (holding that lessee's insurance policy excluded damage to leased commercial building because the judgment obtained by the lessor was for damage to property occupied by and rented to the insured); *Cell–O–Mar, Inc. v. Gros,* 479 So.2d 386, 396 (La.Ct.App.1985) (holding that commercial liability policy issued to lessee of building did not provide liability coverage to lessee for damage caused by him to the lessor's building); *Moore v. Lindeman,* 488 So.2d 1300, 1302 (La.Ct.App.1986) (dismissing lessor's complaint against lessee's insurer because loss suffered to lessor's trees was specifically excluded by the owned, occupied or rented exclusion in lessee's liability policy); *Cle Elum Bowl, Inc. v. North Pacific Ins. Co., Inc.,* 96 Wash.App. 698, 981 P.2d 872 (1999) (holding that provision in lessee's commercial general liability policy excluding coverage for damage to property "you own, rent, or occupy" excluded coverage

for roof collapse and dismissing lessor's suit against lessee's insurer).

## VI.

The Court must therefore determine what portions of the building Coleman owned, rented or occupied for purposes of the CGL.[5] At the time of fire, Coleman operated both Johnny BAM and Advanced Auto Electric out of the building. However, the named insured on the declarations page of the policy is "Russ Coleman dba Johnny Bad Ass" and the policy insured a motorcycle repair shop. The policy does not reference Advanced Auto Electric. Coleman operated that business in a separate area of the building.[6] A sole proprietorship is generally not considered a distinct legal entity. Thus, the Court must determine whether the policy covers Coleman activities as an insured in conjunction with both businesses, or only in conjunction with Johnny BAM. If the policy governs both businesses then both will be subject to the own, occupy, or rent exclusion. The insurance policy clearly indicates that coverage applies to the motorcycle repair business. The Court concludes that the Policy covered Coleman only for his commercial activities connected with Johnny BAM. *See, e.g., Consolidated American Ins. Co. v.* *Landry,* 525 So.2d 567 (La.Ct.App.1988). Had the parties intended otherwise, the Policy would not have included the limiting phrase "dba Johnny Bad Ass Motorcycles" in the designation of the insured.[7] Consequently, the Court concludes that the CGL policy applies only to Johnny BAM Shop, and, therefore, only excludes fire liability coverage for the portion of the building owned, rented or occupied by Johnny BAM.

Essex will be liable for the entire amount of damages ultimately assessed against Coleman as a result of the claim Travelers paid to L/A Auto Cleaning because Travelers' claim relates only to the damages suffered by L/A Auto Cleaning. Determining the actual amount of Essex's liability is slightly more complicated. Charter Oak paid Parrot $398,641.00 for damages arising out of the fire. This amount presumably includes compensation for both damage to the space leased by Johnny BAM as well as damage to the rest of Parrot's building. If Charter Oak receives a full judgment against Coleman for this amount, the full judgment amount should be divided into the amount representing damage to Johnny BAM and the amount representing damage to the rest of Parrot's building. *See, e.g., USF Ins. Co.,*

---

**5.** Essex also argues that the Court should exclude coverage for the portion of the building rented by L/A Auto Cleaning because Coleman had permission to enter that business. The Court does not believe that any authority exists to support this argument. The common and ordinary meaning of occupy certainly entails a residence of a more permanent and lasting nature than mere permission to enter.

**6.** Parrot even testified that Coleman paid separate rent for each space.

**7.** The Court is aware that a vast majority of jurisdictions have held that a sole proprietorship is not a distinct legal entity separate and apart from the individual owner in the con-

text of automobile insurance, especially where uninsured motorist coverage is involved. *See, e.g., Bushey v. Northern Assurance Co. of Am.,* 766 A.2d 598 (Md.2001) (compiling cases). The majority of these cases involve factual scenarios that are far different from the present. The question before the Court today does not involve many of the public policy concerns that surround automobile liability and uninsured motorist coverage. The Court's resolution of the current issue is limited to the facts before it, and the Court expresses no opinion on the scope of coverage of a commercial insurance policy for injury or property damage arising from the use of a motor vehicle, where a sole proprietorship is named as the insured.

175 F.Supp.2d at 754–755. Under the CGL, Essex is only responsible for the amount representing damage to the remainder of Parrot's building. *See id.*

The Court will enter an order consistent with this Memorandum Opinion. The Court will hear proof on the issue of damages, if necessary.

## ORDER

The parties have filed cross-motions for summary judgment. The Court has reviewed the evidence and has filed a Memorandum Opinion. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that, Essex's motion for summary judgment is DENIED IN PART and SUSTAINED IN PART as to the interpretation of the CGL policy as set forth in the accompanying Memorandum Opinion.

IT IS FURTHER ORDERED that Charter Oak and Travelers' motion for summary judgment is SUSTAINED IN PART and DENIED IN PART and as to the interpretation of the CGL policy as set forth in the accompanying Memorandum Opinion.

IT IS FURTHER ORDERED that on or before **August 15, 2003,** the parties shall advise the Court of any actions necessary to conclude this case.

IT IS FURTHER ORDERED that the Court will hear proof on the issue of damages if necessary.

This is not a final order.