# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-780

_____

LARRY MUSSELWHITE,

    Appellant,

    v.

FLORIDA FARM GENERAL
INSURANCE COMPANY and
FLORIDA FARM BUREAU
CASUALTY INSURANCE COMPANY,
JOSEPH HART, an individual,
JODH3, INC., d/b/a Bell Feed &
Farm, Well & Pump,

    Appellees.

_____

On appeal from the Circuit Court for Gilchrist County.
Monica J. Brasington, Judge.

May 28, 2019


PER CURIAM.

In this appeal from a final summary judgment in an action for declaratory relief, Appellant asserts that the trial court erred in concluding that two insurance policies did not provide coverage for personal injuries that Appellant sustained while drilling a water well for a residential customer of the insureds. In doing so, Appellant claims that (1) the declaration page's reference to the fictitious name of the insureds' feed store business did not limit

coverage because a fictitious name is not a legal and insurable entity separate and apart from the named insured; and (2) the well drilling activity arose out of operations necessary or incidental to business conducted on the feed store premises. Finding both claims to be without merit, we affirm.

## I.

Appellant filed a negligence action against JODH3, Inc. d/b/a Bell Feed & Farm, Well & Pump and its principal, Joseph Hart, for injuries he sustained after he had been hired to assist in a water well drilling project in Trenton, Florida. Subsequently, Appellees, Florida Farm General Insurance Company and Florida Farm Bureau Casualty Insurance Company, filed a complaint for declaratory relief seeking a determination that they had no duty under two commercial general liability policies to defend or indemnify JODH3 and Hart as to Appellant's claims against them.

The subject policies were first issued on August 19, 2011, and renewed annually without any changes. The declarations page to the first policy identified "JODH3, Inc. d/b/a Bell Feed & Farm" as the named insured and described the business as a "feed store." The declarations page of the second policy identified Joseph Hart and his wife as named insureds and also described the business as a "feed store." Both polices contained a specific endorsement limiting coverage to "'bodily injury,' 'property damage,' 'personal injury,' 'advertising injury' and medical expenses arising out of . . . [t]he ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises[.]" The schedule described the premises as follows:

> 1159 S PARIS ST BELL, FL 32619-2396
> FEED/GRAIN/HAY DEALER
> NON-COMBUSTIBLE

The second policy was issued because Hart and his wife owned the business premises—which they leased to JODH3—and might be subject to personal liability for claims arising out of their ownership of the premises.

2

During the 2014-2015 policy period, Hart began a new business that offered well drilling services under the fictitious name "JODH3, Inc. d/b/a Bell Feed & Farm, Well & Pump." Most of the well drilling—65 to 75 percent—was for residential customers. Hart continued to maintain the fictitious name "JODH3, Inc. d/b/a Bell Feed & Farm" for his feed store business. While both businesses were owned by JODH3, each business had separate banks accounts, email addresses, business cards, invoices, and phone numbers.

In 2015, Hart contacted his insurance agent, Ben Colson, to inquire about obtaining insurance for his new well drilling business, JODH3, Inc. d/b/a Bell Feed & Farm, Well & Pump. On May 26, 2015, Colson contacted an underwriter for Appellees and requested a quote for liability insurance covering the well drilling business. That same day, the underwriter informed Colson that Appellees did not insure well drilling operations. Colson then told Hart that he could not obtain the requested coverage from Appellees. On July 20, 2015, Colson obtained a quote for well drilling liability coverage from Atlantic Casualty Insurance Company with an effective date of June 22, 2015. When Colson communicated the quote to Hart, Hart responded that he did not have the cash on hand to pay the premium and chose not to obtain coverage at that time.

On January 28, 2016, Appellant was hired as an independent contractor by JODH3, Inc. d/b/a Bell Feed & Farm, Well & Pump and sustained injuries while drilling a well on a residential customer's property. The next day, Hart contacted Colson to obtain the liability policy that Colson previously quoted for his well drilling business. On February 2, 2016, Colson received an updated quote from Atlantic Casualty Insurance Company. Hart applied for the insurance in the name of "Bell Feed & Farm, Well & Pump" and obtained liability coverage for the well drilling business on June 3, 2016.

Appellant filed a motion for summary judgment in Appellees' declaratory judgment action. Specifically, he argued that since a fictitious name was not a viable legal entity separate from its principal, JODH3 should be insured under the "Bell Feed & Farm" policy for any type of business it operated because there was no

3

express exclusion for well drilling in the policy. He also argued that the well drilling activity was incidental or related to the operation of the feed store.

Appellees filed a cross-motion for summary judgment on the grounds that the policies did not insure the well drilling business and Appellant's claims were entirely unrelated to the insured business premises, which had been described as a feed store. Specifically, Appellees asserted that while both the feed store and the well drilling operation were owned by the same legal entity, JODH3,  the only insured business was the feed store as evidenced by the specification of the named insured as "JODH3, Inc. d/b/a Bell Feed & Farm" and Hart's application describing the business as a feed store with no mention of well drilling. Appellees also claimed that they never knowingly undertook the risk of insuring a well drilling business because they did not write coverage insuring that type of risk. Finally, they argued that it was undisputed that the well drilling operations were neither necessary nor incidental to the feed store premises.

After holding a hearing, the trial court denied Appellant's motion for summary judgment, granted Appellees' motion for summary judgment, and entered final judgment for Appellees. In doing so, the court concluded that the insurance policies did not provide coverage for claims arising out of the insureds' drilling operations, but only covered claims arising out of their business premises, which was described by the declaration's page as a "feed store." The court further found that well drilling operations were neither necessary nor incidental to the feed store business or its premises. This appeal followed.

II.

The interpretation of an insurance contract is a question of law subject to de novo review. *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017); *Lee v. Montgomery*, 624 So. 2d 850, 851 (Fla. 1st DCA 1993). Where the language in an insurance contract is unambiguous, a court must interpret the contract in accordance with its plain meaning. *Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 975-76 (Fla. 2017). "Policy language is considered to be ambiguous . . . if the language 'is susceptible to

4

more than one reasonable interpretation, one providing coverage and the other limiting coverage.'" *Travelers Indem. Co. v. PCR Inc.,* 889 So. 2d 779, 785 (Fla. 2004) (quoting *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)). "[A]mbiguous insurance policy exclusions are construed against the drafter and in favor of the insured." *Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). "To find in favor of the insured on this basis, however, the policy must actually be ambiguous." *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010) (emphasis omitted). "The ambiguity must be genuine, and the lack of a definition for an operative term 'does not, by itself, create an ambiguity.'" *Macedo*, 228 So. 3d at 1113 (quoting *Botee v. S. Fid. Ins. Co.*, 162 So. 3d 183, 186 (Fla. 5th DCA 2015)). "'When a term in an insurance policy is undefined, it should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine such a meaning.'" *Id*.

## A.

In this case, Appellant claims that the trial court erred in entering summary judgment for Appellees upon concluding that the insurance policies they issued to the insureds—JODH3 and Hart—did not provide coverage for the personal injuries Appellant suffered while drilling a water well for a residential customer of the insureds. First, he argues that since a fictitious name is not a viable legal entity separate from its principal, JODH3 should be insured under the "Bell Feed & Farm" policy for any type of business it operated because there is no express exclusion for well drilling in the policy. It is undisputed that the declarations page to the policy in question identified "JODH3, Inc. d/b/a Bell Feed & Farm" as the named insured and described the business as a "feed store." It is also undisputed that JODH3's well drilling business ("JODH3, Inc. d/b/a Bell Feed & Farm, Well & Pump") was not in existence when this policy was initially issued. Based on the above, the trial court concluded that under the plain language of the policy, JODH3 was insured under the policy only for the operation of its feed store business under the fictitious name "Bell Feed & Farm."

A number of courts in other jurisdictions have held that when a liability policy identifies a named insured as doing business

5

under a fictitious name, coverage is limited only to business done under the fictitious name and does not extend to any other business operated by the insured. *See Lincoln Gen. Ins. Co. v. Pacheco*, No. EP-1 1-CV-482-DB, 2012 WL 12539325, at *5 (W.D. Tex. Mar. 2, 2012); *Charter Oak Fire Ins. Co. v. Coleman*, 273 F. Supp. 2d 903, 913 (W.D. Ky 2003); *Miller v. Hehlen*, 104 P.3d 193, 199 (Ariz. Ct. App. 2005); *Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.*, 78 Cal. Rptr. 2d 429, 432 (Cal. Ct. App. 1998); *Consol. Am. Co. Ins. v. Landry*, 525 So. 2d 567 (La. Ct. App. 1988); *Hertz Corp. v. Ashbaugh*, 607 P.2d 1173 (N.M. Ct. App. 1980); *Budget Rent-A-Car Sys., Inc. v. Shelby Ins. Grp.*, 541 N.W.2d 178, 181 (Wis. Ct. App. 1995). At least one Florida court appears to agree with this position. *See Rosen v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 249 So. 2d 701 (Fla. 3d DCA 1971) (holding that an insurance policy did not cover an accident involving a vehicle owned by partner and driven by partner's daughter where the policy listed the named insured as partner doing business as Market Truck Stop). However, other courts have held to the contrary. *See Providence Washington Ins. Co. v. Valley Forge Ins. Co.*, 50 Cal. Rptr. 2d 192, 195-96 (Cal. Ct. App. 1996); *Hall v. Auto-Owners Ins. Co.*, 658 N.W.2d 711, 720 (Neb. 2003).

We conclude that the greater weight of authority supports the trial court's conclusion that the "d/b/a" designation limited liability to JODH3's feed store business operated under the fictitious name. To hold otherwise would frustrate the intent clearly expressed in the policy declarations, subject Appellees to open-ended exposure to liability for any new business operations that JODH3 might unilaterally decide to undertake, and force Appellees to insure risks that they never contracted to cover. JODH3 cannot be allowed to effectively rewrite the policy by requiring Appellees to insure risks arising from a well drilling business that did not exist when the policy terms were agreed upon.

B.

In addition, Appellant asserts the trial court erred in further finding that the policies provided no coverage for well drilling operations unrelated to the insureds' feed store premises. Both policies contained a specific endorsement limiting coverage to "'bodily injury,' 'property damage,' 'personal injury,' 'advertising

6

injury' and medical expenses arising out of . . . [t]he ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises[.]" The schedule described the premises as a "FEED/GRAIN/HAY DEALER."

In *Union American Insurance Co. v. Haitian Refugee Center/Sant Refijie Ayisyin, Inc.*, 858 So. 2d 1076 (Fla. 3d DCA 2003), the Third District held that an identical endorsement in a commercial liability policy effectively converted the policy into the equivalent of a premises or owner's, landlord's and tenant's policy. *Id.* at 1078 n.1. As a result, the court held that the policy did not provide coverage for the shooting death of a bystander at a street rally sponsored by the insured that was held a mile away from the insured's headquarters. *Id.* at 1077-78. The court rejected the trial court's conclusion that coverage was provided because the event at which the decedent was killed was an operation necessary or incidental to the insured's business, explaining that this involved an improper judicial rewriting of the policy by substituting "business" for the policy word "premises." *Id.* at 1078. Based on this decision, the policies issued by Appellees would not provide coverage for Appellant's accident because it occurred away from the insureds' premises while Appellant was drilling a well on a third party's property, which did not concern an operation necessary or incidental to the insureds' premises as described in the schedule.

However, in *Southeast Farms, Inc. v. Auto-Owners Insurance Co.*, 714 So. 2d 509 (Fla. 5th DCA 1998), the Fifth District came to a different conclusion in a case involving the same designated premises endorsement to a commercial general liability policy, holding that it provided coverage for an off-premises auto accident arising from the alleged negligence of the insured—a produce broker primarily brokering potatoes—in failing to inspect the delivery truck and driver. The court found that the endorsement created an ambiguity as to whether the policy was a general liability policy or a premises liability policy, requiring it to be construed in favor of the insured. *Id.* at 511. The court also noted that the insurer made the "surprising" assertion that the policy would cover operations necessary or incidental to the main business of the insured, even though the policy referred only to

7

premises, which "pretty much gives the ball game away." *Id*. at 511 n.3. Based on this concession, the court concluded that the insurer recognized that "'premises' includes the business operated on the premises." *Id*. at 512. The court further concluded that "the act of obtaining transportation for brokered potatoes is an incident of the brokering of potatoes." *Id*. at 511. Accordingly, the court reversed the entry of summary judgment for the insurer and remanded for judgment in favor of the insured. *Id*. at 512.

Citing this decision, federal courts have construed Florida law as providing that the endorsement's use of the term "premises" includes business operations conducted from the premises. *See Evanston Ins. Co. v. Gaddis Corp.*, 145 F. Supp. 3d 1140, 1149-53 (S.D. Fla. 2015); *Szczeklik v. Markel Int'l Ins. Co.*, 942 F. Supp. 2d 1254, 1262 (M.D. Fla. 2013); *but see Nationwide Mut. Fire Ins. Co. v. Wilbon*, 960 F. Supp. 2d 263, 268-69 (D.D.C. 2013) ("There is no consensus among courts whether a 'limitation of liability to designated premises' provision limits insurance coverage to injury at only the specified insured premises or whether it extends insurance coverage to all business operations conducted from the insured premises, thereby covering off-site injuries.").

Assuming the designated premises endorsement in this case created an ambiguity and that the term "premises" includes the business operated on the premises, the trial court correctly found that the polices did not provide coverage for well drilling operations that were not necessary or incidental to the feed store business conducted on the premises. The schedule described the feed store premises as a "FEED/GRAIN/HAY DEALER." The plain or ordinary meaning of this description is that the business operated on the premises involved the sale of animal feed, particularly that for farm animals. An operation necessary or incidental to such a business might include the delivery of feed products to customers.

Contrary to Appellant's assertion, this very specific business description does not encompass the general sale of farm products and services, which could include well drilling for farming purposes. Because well drilling is not necessary or incidental to the business of selling animal feed, the trial court properly concluded that Appellant's off-premises injury was not covered by the policies

8

issued to JODH3 and Hart. Furthermore, even if the business description encompassed the general sale of farm products and services, this would not include Appellant's drilling a well for a residential customer unrelated to farming.

## III.

In short, we conclude that the trial court properly entered summary judgment for Appellees because Appellant's off-premises injury was not covered under the policies issued to JODH3 and Hart where (1) the "d/b/a" designation limited liability to JODH3's feed store business operated under the fictitious name; and (2) well drilling was not necessary or incidental to business conducted on the feed store premises.* Accordingly, the final judgment is affirmed in all respects.

---

*We also note that there is compelling extrinsic evidence further establishing that the policies issued to JODH3 and Hart did not cover well drilling operations. Despite this evidence, there is considerable doubt as to whether extrinsic evidence can still be used to construe insurance policies to the extent they contain any ambiguities. In *Washington National Insurance Corp. v. Ruderman*, 117 So. 3d 943 (Fla. 2013), Justice Labarga in a plurality opinion (joined by two justices with one justice concurring in the result) opined that the ambiguous policy "must be construed against the insurer and in favor of coverage without resort to consideration of extrinsic evidence." *Id.* at 952. However, Chief Justice Polston in a dissenting opinion (joined by two justices) accused the plurality of silently receding from precedent providing that "an ambiguous contract is construed against the insurer only as a last resort, meaning only after all available construction aids, including extrinsic evidence, fail to resolve the ambiguity." *Id.* at 954-58 (citing case law). To the extent there was no actual majority opinion in *Ruderman*, it arguably does not constitute binding precedent prohibiting the consideration of extrinsic evidence when construing an ambiguous insurance contract in Florida. Even if consideration of extrinsic evidence is prohibited, the trial court properly found that the plain language of the policies did not cover off-premises well drilling activities.

9

AFFIRMED.

ROBERTS, RAY, and JAY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Daniel M. Bachi of Sellars, Marion & Bachi, P.A., West Palm Beach, for Appellant.

Hinda Klein of Conroy Simberg, Hollywood, for Appellees Florida Farm General Insurance Company and Florida Farm Bureau Casualty Insurance Company.