**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 06-1563**

_____

ONEBEACON   INSURANCE   COMPANY;   PENNSYLVANIA
GENERAL INSURANCE COMPANY,

                              Plaintiffs - Appellees,

          versus

METRO READY-MIX, INCORPORATED,

                              Defendant - Appellant.

_____

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Andre M. Davis, District Judge.  (1:05-cv-
01530-AMD)

_____

Argued:  May 24, 2007                Decided:  July 13, 2007

_____

Before WILLIAMS, Chief Judge, and WIDENER and SHEDD, Circuit
Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:**  Brian S. Jablon, SALTZMAN & JABLON, L.L.C., Ellicott City,
Maryland, for Appellant.  Stacey Ann Moffet, ECCLESTON & WOLF,
Baltimore, Maryland, for Appellees.  **ON BRIEF:** Larry L. Puckett,
Jr., ECCLESTON & WOLF, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Metro Ready-Mix, Inc. (Metro) is the named insured on a commercial general liability policy (the policy) issued by Appellees OneBeacon Insurance Company and Pennsylvania General Insurance Company (collectively "OneBeacon"). OneBeacon sought a declaratory judgment in district court that it was not required to cover Metro for losses incurred as a result of a defective product supplied by Metro to a contractor. The district court granted summary judgment to OneBeacon. For the following reasons, we affirm.

I.

On April 24, 2003, Metro entered into a supply contract with Berkel & Company Contractors (Berkel) to supply concrete for various of Berkel's construction projects. That same day, Berkel issued an order to Metro for 1600 cubic yards of grout[1] for use on a parking garage construction job in Baltimore, Maryland. Berkel constructed piles by first drilling sixty to seventy feet into the earth and placing steel rebar in the holes. Berkel then filled the holes with grout manufactured by Metro. After the grout hardened,

---

[1]Grout is a construction material used to connect sections of pre-cast concrete, fill voids, and seal joints. Grout is generally composed of a mixture of water, cement, sand and sometimes color tint. It is applied as a thick liquid and hardens over time, much like mortar.

other contractors constructed concrete pile caps and columns upon the piles.

When Metro began manufacturing the grout, it inadvertently mixed the wrong ratio of water to cement, thereby making the grout defective and weaker than normal. To compound matters, Metro was not aware of the defect and delivered the grout to Berkel. After the caps and columns were installed on top of the grout, however, Berkel learned that the grout's strength was significantly lower than was specified.

As a result of the defective grout, Chesapeake Contracting Group (one of Berkel's contractors) was required to take remedial steps. These steps included demolishing certain portions of the new construction and installing new pilings with new grout. Berkel paid Chesapeake $195,644.00 for the costs of the repairs. Berkel also incurred an additional $89,386.25 in costs, for a total loss of $285,040.25 as a result of the defective grout.

Berkel refused to pay Metro for unpaid invoices in the amount of $241,254.00 because of the defective grout. On May 6, 2004, Metro sued Berkel in state court. Berkel filed a counterclaim against Metro in August 2004, seeking reimbursement for the costs that it incurred as a result of the defective grout.

Metro notified OneBeacon of the counterclaim, but OneBeacon refused to provide coverage for the claim. Metro claims that it expected OneBeacon to provide coverage for the claim because

3

OneBeacon's predecessor in interest had provided coverage for a similar claim under the previous year's policy.

On March 14, 2005, Metro and Berkel settled their dispute. Metro agreed to issue "a credit memorandum in the full amount of all of Metro's invoices to Berkel that are unpaid as of the date of this settlement . . . , and such Credit shall constitute full and final payment for the entirety of Berkel net claim." (J.A. at 161.)[2] In effect, Metro agreed to forego payment for the supplied grout so long as Berkel did not seek payment for its costs incurred in repairing the defective grout. Thus, no actual payment was made by Metro. The parties also agreed to dismiss with prejudice all claims against one another.

On June 8, 2005, OneBeacon -- unaware of the settlement between Metro and Berkel -- filed a complaint for declaratory judgment against Metro, seeking a declaration that Metro was not entitled to coverage under the policy. After learning of the settlement, OneBeacon filed an amended complaint, seeking an additional declaration that it was not obligated to indemnify Metro for the claims asserted in Berkel's counterclaim because Metro did not have to pay any damages.

On November 7, 2005, OneBeacon filed a motion for summary judgment. The district court awarded summary judgment to OneBeacon

---

[2]Citations to the J.A. refer to the joint appendix filed with this appeal.

on April 19, 2006.  The district court found that the dispute was moot with respect to the indemnification question because of the settlement.  With respect to the coverage question, the district court found that there was no "occurrence" under the policy because any damage caused by the defective grout did not constitute an "accident."  The district court, however, failed to address Metro's argument that OneBeacon was estopped from denying coverage because it had provided coverage on a similar claim the previous year.

Metro timely appealed.  We have jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 2006).

## II.

We review de novo the district court's grant of summary judgment in favor of OneBeacon, applying the same standard as did the district court.  See Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006) (en banc).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Because the facts are undisputed and we are presented with a purely legal question of insurance coverage, the case is ripe for summary judgment.

5

Metro contends that the district court erred in finding that there was no "occurrence" under the policy and in failing to address Metro's estoppel claim. To answer these questions, we apply Maryland's substantive law regarding the interpretation of an insurance policy. French v. Assurance Co. of Am., 448 F.3d 693, 700 (4th Cir. 2006). We address each of Metro's arguments in turn.

A.

"Provisions in insurance policies are to be interpreted like those of any other contract." Hartford Fire Ins. Co. v. Himelfarb, 736 A.2d 295, 300 (Md. 1999). Maryland law does not require that an insurance policy be strictly construed against the insurer; rather, courts must give "effect [to] the intentions of the parties." Nationwide Ins. Co. v. Rhodes, 732 A.2d 388, 390 (Md. Ct. Spec. App. 1999).

Under Maryland law, there is an occurrence under a commercial general liability (CGL) policy only upon the happening of an accident. Lerner Corp. v. Assurance Co. of Am., 707 A.2d 906, 911 (Md. Ct. Spec. App. 1998). "While [CGL policies generally] do not define the term 'accident,' controlling Maryland case law provides that an act of negligence constitutes an 'accident' under a liability insurance policy when the resulting damage takes place without the insured's actual foresight or expectation." French, 448 F.3d at 698.

6

In French, we addressed an insurance question under Maryland law.  Jeffco Development Corporation constructed a single-family home for the Frenches.  Jeffco finished the exterior of the home with a synthetic stucco system known as EIFS, which was installed by a contractor.  Id. at 696, 703.  Years later, the Frenches discovered extensive moisture and water damage to the walls of their home, which resulted from the defective EIFS.  The Frenches filed suit against Jeffco and the question on appeal was whether Jeffco's insurer needed to cover the claim under their CGL policy. Id. at 696.

Interpreting Maryland law, we concluded that the insurer was required to cover any unexpected property damage that occurred to something other than the defective object as a result of the defective object, but the insurer was not required to cover any damage to the defective object itself:

> [I]f the defect causes unrelated and unexpected property damage to something other than the defective object itself, the resulting damages . . . may be covered.  For example, if a collapse of [a] veneer had injured a user of the facility or damaged property other than the veneer itself, these may well be covered.

Id. at 702 (internal quotation marks and alterations omitted).

Thus, when there is no property damage "to otherwise nondefective parts of [a] building," there is no "accident" or "occurrence."  Id. at 703.  In other words, coverage exists only "to remedy unexpected and unintended property damage to the

7

contractor's otherwise nondefective work-product caused by the . . . defective workmanship."  Id. at 706.

OneBeacon -- focusing on this distinction -- contends that Metro's defective grout did not damage any other property.[3]  Metro, on the other hand, argues that the defective grout effectively damaged other property because the caps and columns that were placed on top of the grout were required to be removed.  Because that property had to be destroyed to repair the defect, Metro contends it represents unintended property damage.  The district court rejected this argument, finding it inconsistent with Maryland law.  We agree.

In Woodfin Equities Corp. v. Harford Mutual Insurance Co., a hotel hired the insured to install an HVAC system.  678 A.2d 116 (Md. Ct. Spec. App. 1996), overruled in part on procedural grounds, 687 A.2d 652 (Md. 1997).[4]  The HVAC system was defective, and

---

[3]In light of the settlement between Metro and Berkel, OneBeacon further contends that Metro suffered no damages under the policy because "the amount that Metro now seeks coverage for has nothing to do with damage to property, but is actually the amount of the invoices for Metro's own product, which Berkel refused to pay."  (Appellee's Br. at 28.)  Although this argument has some intuitive appeal, we assume, for the sake of argument, that Metro suffered damages under the policy.

[4]The Maryland Court of Special Appeals has since explained the Court of Appeals' partial reversal of Woodfin as "based on the failure of the trial court to issue a declaratory judgment; it had merely dismissed the suit. What was affirmed was the holding that (1) Woodfin had standing to bring the declaratory judgment action against Hartford Mutual and (2) that the insurance policy in question did cover certain damages sustained by Woodfin."  Howard v. Montgomery Mut. Ins. Co., 805 A.2d 1167, 1172 (Md. Ct. Spec.

carpeting and drywall had to be destroyed to remedy the defect. Id. at 121, 131. The insured sought coverage for the costs of the carpeting and drywall. The Maryland court found that the insurer was not required to cover the property damage because pulling up carpeting and breaking through drywall to access the HVAC system was not property damage, but rather the "cost incurred in replacing and repairing the HVAC systems." Id. at 132 n.8. The court further explained: "Voluntarily pulling up carpeting or breaking through dry-wall to access the HVAC units is not property damage . . . . Even if it could be considered 'property damage,' we would hold that it was not caused by an 'occurrence,' because the so-called damage was not accidental." Id.

Under this analysis, we agree with the district court that there was no occurrence under the policy. The caps and columns that had to be removed or destroyed to remedy the defect in Metro's product are on all fours with the carpeting and drywall that had to be removed or destroyed in Woodfin to remedy the defect in the HVAC units.

In French, we explained that if a product does not meet the contract requirements of a sale, it should not be unforseen that "the purchaser will be entitled to correction of the defect."

---

App. 2002). Most important to our inquiry, Maryland courts continue to find "Woodfin instructive on the interpretation of CGL policies generally." Lerner Corp. v. Assurance Co. of Am., 707 A.2d 906, 910 (Md. Ct. Spec. App. 1998).

<u>French</u>, 448 F.3d at 701. Here, Metro put forth no evidence showing that the pile caps and columns that had to be removed were damaged by Metro's defective grout. Instead, any harm to the caps and columns occurred as a result of replacing the defective grout. This damage was not unforseen insofar as the term has been interpreted with respect to CGL policies under Maryland law. Moreover, that understanding is consistent with longstanding principles of insurance law:

> Replacement and repair costs are to some degree within the control of the insured. They can be minimized by careful purchasing, inspection of material, quality control and hiring policies. If replacement and repair costs were covered, the incentive to exercise care or to make repairs at the least possible cost would be lessened since the insurance company would be footing the bill for all scrap. Replacement and repair losses tend to be more frequent than losses through injury to other property, but replacement and repair losses are limited in amount since the greatest loss cannot exceed the cost of total replacement. If the insured will stand these losses, insurance can be provided more cheaply since the company will be freed from administering many small claims for repairs, and it can set a rate for the more unusual risk of injury to property other than the contractor's work or product. This risk can be the hazardous one since there are no natural limitations on the damage the contractor might do to a homeowner's or a neighbor's property.

Stewart Macaulay, <u>Justice Traynor and the Law of Contracts</u>, 13 Stan. L. Rev. 812, 825-26 (1961).

Any damage done to the pile caps and columns while remedying Metro's defective grout cannot be deemed caused by an occurrence under the CGL policy "because the so-called damage was not accidental." <u>Woodfin</u>, 678 A.2d at 132 n.8. Just as a company must

10

be presumed to foresee that it will be forced to pay for any defects in its own property, the company must also foresee that it will be forced to pay for incidental costs that are incurred in remedying those defects. Accordingly, under Maryland law, there was no occurrence, and therefore, Metro is not covered under the policy for this event.

B.

Metro further contends that even if its damages were not covered under the language of the policy, OneBeacon was estopped from denying coverage. The basis for Metro's contention is that OneBeacon's predecessor in interest had previously provided Metro coverage under a similar scenario.

In 2002, Metro provided defective concrete for a project, and that concrete was used in fabricating building columns. Metro's client was forced to demolish the columns and rebuild them. OneBeacon's predecessor in interest provided coverage, stating that "because the defective columns encased the 'work and product' of others, there is in fact resulting property damage. . . . The only damages not covered would be the cost of supplying new cement." (J.A. at 277.) Metro now argues that it renewed its policy with OneBeacon in reliance upon the predecessor in interests' actions granting coverage on that claim, and OneBeacon should therefore be estopped from denying coverage.

11

Although Metro clearly presented this argument below, the district court, for some reason, failed to address it. Nevertheless, we address the matter de novo, as this is an appeal of a grant of summary judgment and a remand to the district court for initial consideration of this issue "would be an unnecessary waste of judicial and litigant resources." O'Reilly v. Bd. of Appeals, 942 F.2d 281, 284 (4th Cir. 1991).

As a general matter, Maryland law does not recognize estoppel as a means of creating a new contract. In Sallie v. Tax Sale Investors, Inc., for example, the Maryland court explained that, under Maryland law, "waiver or estoppel may occur only when it does not create new coverage; an extension of coverage may only be created by a new contract." 814 A.2d 572, 575 (Md. Ct. Spec. App. 2002) (internal quotation marks omitted). "[I]f the loss was not within the coverage of the policy contract, it cannot be brought within that coverage by invoking the principle of waiver or estoppel. Waiver or estoppel can only have a field of operation when the subject-matter is within the terms of the contract." Prudential Ins. Co. of Am. v. Brookman, 175 A. 838, 840 (Md. 1934).

Metro, however, argues that there are exceptions to the general rule. Specifically, Metro relies on an exception outlined in Nationwide Mutual Insurance Co. v. Regional Electrical Contractors, 680 A.2d 547 (Md. Ct. Spec. App. 1996). In Nationwide, one of the insured's switchboards exploded. A company

12

representative immediately contacted Nationwide, and Nationwide told the company that it would "take care of it" because "that's why you have insurance." Id. at 549. In reliance on those specific statements, the company made the repairs. Thereafter, Nationwide denied coverage. The court held that Nationwide was estopped from denying coverage because Nationwide told the company that it was covered, and because of reliance on that misrepresentation, the insured had repaired damage and incurred additional costs. Id. at 554.

Nationwide thus presented a factual scenario quite different from this case. In Nationwide, the agent's statements were made "contemporaneously with the transaction to which [they] relate[d]." Id. at 553. Thus, Nationwide's specific comments at the time "induced Regional to proceed with the repairs." Id. Nationwide was therefore estopped from denying coverage because it induced Regional to incur those costs. Nationwide's statements resulted in a change -- a prejudicial change -- in Regional's conduct.

Here, on the other hand, OneBeacon did nothing to induce Metro to supply faulty concrete or to pay for the results of the defects. Moreover, OneBeacon never once suggested that it was going to provide coverage to Metro for this incident. OneBeacon did nothing to prejudicially change Metro's conduct. The facts are therefore meaningfully different from the facts in Nationwide. Accordingly, the exception articulated in Nationwide does not apply. We

13

therefore apply the general rule baring extension of coverage based on estoppel and reject Metro's opaque estoppel argument.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to OneBeacon.

<u>AFFIRMED</u>

14